A98A2040, A98A2041. PROVIDENT INDEMNITY LIFE INSURANCE COMPANY et al. v. JAMES et al.; and vice versa.

(506 SE2d 892)

ELDRIDGE, Judge.

Defendants/appellants Provident Indemnity Life Insurance Company and its parent company, Provident American Corporation (herein collectively referred to as "Provident"), appeal the denial of the company's motion to dismiss a RICO[1] claim filed by plaintiffs/cross-appellants Doris E. James and Elmer W. James (the "James family"). The James family filed a cross-appeal which challenges the trial court's determination that it lacked subject matter jurisdiction over their tort claims against Provident and the court's dismissal of such claims. Because we find that the trial court had subject matter jurisdiction over all of the claims, we reverse the trial court's dismissal of the tort claims and remand the case for further proceedings.

The complaint by the James family asserted that, in August 1995, Mark Hunter Harrison,[2] an agent of Provident, induced them to purchase medical insurance from Provident, thereby causing the James family to cancel their existing medical insurance plan, which covered all of their pre-existing medical conditions. The James family paid premiums to Provident and, in April 1996, submitted claims for medical expenses to Provident for payment. Such claims were denied by Provident, allegedly on the basis that no benefits were available for payment of expenses resulting from the treatment of pre-existing conditions. As a result, the James family incurred substantial, unreimbursed medical expenses that would have been paid by their former insurance company if they had not cancelled their previous plans in reliance upon Harrison's assurances that Provident would cover their pre-existing conditions.

The James family filed suit against Provident and Harrison in September 1997. Their complaint alleged that the defendants vio-

---

[1] Georgia Racketeer Influenced & Corrupt Organizations Act, OCGA § 16-14-1 et seq.

[2] Although named as a defendant in the complaint, Harrison did not appeal the trial court's order.

lated Georgia's RICO statute, OCGA § 16-14-4 (a), (b), and (c). The James family also asserted that Provident (1) violated OCGA § 51-6-1 by making fraudulent representations with the intent to deceive and defraud them; (2) intentionally breached express and implied covenants of fair dealing; (3) tortiously breached their insurance contract; and (4) wrongfully interfered with their property rights. As to the tort claims, the James family requested compensatory and punitive damages, as well as attorney fees.

Provident responded and moved to dismiss the complaint for lack of subject matter jurisdiction on November 21, 1997. The trial court granted the motion as to the tort claims, but denied the motion as to the RICO claims. Both parties appeal. *Held*:

## Case No. A98A2040

In its sole enumeration, Provident alleges that the trial court wrongfully denied its motion to dismiss the James family's RICO claims, asserting that the claims were nonjusticiable for failure of the James family to exhaust administrative remedies prior to pursuing a civil suit. We disagree.

Under OCGA § 16-14-6 (c), "[a]ny person who is injured by reason of any violation of Code Section 16-14-4 shall have a cause of action for three times the actual damages sustained and, where appropriate, punitive damages." See also *State of Ga. v. Shearson Lehman Bros.*, 188 Ga. App. 120, 121 (2) (372 SE2d 276) (1988). Such plaintiff is also entitled to attorney fees and costs of litigation. OCGA § 16-14-6 (c). Further, under OCGA § 16-14-6 (a), a plaintiff may institute a civil proceeding to enjoin further violations of OCGA § 16-14-4. See OCGA § 16-14-6 (b).

In their civil complaint, the James family alleged that they were harmed when Provident acted illegally in violation of OCGA § 16-14-4. In support of such allegation, the complaint claimed that Provident repeatedly appropriated property belonging to the James family "with intent to deprive them of their property in violation of OCGA § 16-8-2 (theft by taking) . . . [and] OCGA § 16-8-3 (theft by deception)." In addition to these and numerous other allegations, the James family asserted that Provident violated the Georgia Insurance Code, OCGA § 33-6-4 (b) (1), (2), (8), and (9), and various Georgia Department of Insurance regulations.

For the purposes of this appeal, we do not have to decide whether such alleged Insurance Code violations rise to the level of a "predicate act" under RICO. See *Security Life Ins. Co. v. Clark*, 229 Ga. App. 593, 599 (1) (b) (494 SE2d 388) (1997); *Olukoya v. American Assn. of Cab Cos.*, 219 Ga. App. 508, 509 (465 SE2d 715) (1995). We find that simply alleging Insurance Code violations does not trans-

form a civil RICO complaint into a cause of action which must be pursued exclusively through administrative channels, particularly when numerous other predicate acts are alleged in the complaint, including fraud. See generally id.

Accordingly, the trial court was correct in finding that the James family was not required to exhaust all administrative remedies prior to asserting their RICO claims. Further, since there exists a possible state of facts that may be shown at trial upon which relief may be granted, then there was no error in the trial court's refusal to dismiss the James family's RICO claims. *Maddox v. Southern Engineering Co.*, 216 Ga. App. 6, 7-8 (2) (453 SE2d 70) (1994).

*Case No. A98A2041*

The James family, as cross-appellants, assert in their sole enumeration of error that the trial court erred in dismissing their tort claims for lack of subject matter jurisdiction. We agree.

The complaint alleges that Provident was involved in a "fraudulent scheme" which involved forming a non-functioning, illusory trust so that Provident could issue "bogus" life, health, and accident insurance policies. The James family also asserted that Provident "engaged in fraudulent and illegal 'post-claims' underwriting — a practice by which they do not make a reasonable investigation of the insured's medical history . . . prior to issuing coverage," then conduct such investigation after claims are submitted "for the purpose of ridding themselves of the insureds by drastically increasing premiums in an effort to cause non-renewal, and/or by rescinding the policy." In addition, the complaint alleges that, in furtherance of the fraudulent scheme, Provident's agent, Harrison, met with the James family "for the purpose of soliciting them to purchase major medical health insurance coverage." Harrison convinced the James family to purchase Provident's plan. Two months later, Provident mailed an insurance certificate to the family evidencing the terms of their coverage. Then, "[j]ustifiably relying on the representation of Defendants that the Policy had been issued and they were covered under the [Provident] Plan," the James family terminated their prior medical insurance coverage. However, when they submitted claims under the Provident policy, Provident "failed and refused to pay such claims, contending that benefits are not available."

According to the complaint, as a direct result of this wrongful conduct, the James family was induced to purchase several substantial, but "worthless," insurance policies; the family incurred significant, unreimbursed medical expenses and was left uninsured, and uninsurable, for future medical expenses; incurred substantial litigation expenses; and sustained humiliation, embarrassment, frustra-

tion, etc. Based upon these allegations, the James family requested compensatory and punitive damages, as well as litigation costs. Notably, the family did not seek equitable relief based upon allegations of Insurance Code violations as part of their tort claims.

However, the trial court, in its order ruling upon Provident's motion to dismiss, repeatedly characterized the complaint as being "based" on violations of the Insurance Code, specifically OCGA § 33-6-4. While it is true that the complaint alleges such violations, as well as numerous other allegations of fraudulent behavior, the tort claims presented in this case are separate and distinct causes of action from an administrative proceeding directed solely at violations of the Insurance Code. Compare OCGA § 51-6-1 with OCGA § 33-6-4 (b). This conclusion is supported by the fact that it *does not matter* whether the James family is able to prove at trial that Provident, in fact, violated the Insurance Code, as such proof is not dispositive of the case. Other evidence, including actions by Provident's agent, may be sufficient to establish and prove the essential elements of fraud and the other tort claims. Under such facts, the tort causes of action in this case had fully vested as a legal action and not as an administrative action, which tort actions could be brought *directly* in the trial court, and not by appeal from an executive branch action under the Administrative Procedures Act ("APA").[3]

As such, this case is clearly distinguishable from that relied upon by Provident, *First Union Nat. Bank &c. v. Independent Ins. Agents &c.*, 197 Ga. App. 227 (398 SE2d 254) (1990), where administrative remedies were sought improperly in court. In *First Union*, a Georgia corporation comprised of an association of insurance agents ("the corporation") filed suit against certain banking interests ("the banks"), seeking a judicial determination of whether the banks were violating the Insurance Code by marketing and selling certain insurance products. The corporation also sought to enjoin the banks from such activities in the future. The suit followed a determination on the same issues by the Insurance Commissioner, obtained through administrative channels pursuant to the Insurance Code, that the banks were not violating the Code; such administrative determination was not appealed by the corporation, as mandated by the APA. The banks moved to dismiss the suit based upon the court's lack of subject matter jurisdiction as to executive branch exclusive jurisdic-

---

[3] An appeal from the Insurance Commissioner, in the executive branch, comes to the superior court under the Administrative Procedures Act, OCGA § 50-13-19 (a), only after an exhaustion of administrative procedures. A declaratory judgment action, under OCGA § 9-4-1 et seq., will not lie where the cause of action has already vested, as in this case. Equity will not lie if there exists any adequate remedy at law, i.e., unexhausted administrative remedies.

tion, which was due to the corporation's failure to exhaust administrative remedies prior to filing the suit for purposes of equity jurisdiction, declaratory judgment, and an appeal under the APA. The trial court denied the bank's motion to dismiss. This Court reversed the trial court's ruling, finding that, "[u]nder OCGA § 33-2-1 et seq., the Insurance Commissioner has exclusive authority to enforce the Insurance Code." Id. at 228 (1). Therefore, the corporation was required to exhaust all administrative remedies unless "the remedy exacts a price which causes it to be no remedy at all." Id. Such exhaustion of administrative remedies and appeal through the APA were the exclusive means by which the superior court could obtain jurisdiction.

First Union clearly requires that, if a party chooses to pursue administrative remedies based upon Insurance Code violations, it must exhaust such remedies before it can appeal under the APA. In the process, the party will be barred from pursuing alternative routes to court from executive branch action or inaction, i.e., when proceedings have been commenced before the Insurance Commissioner. However, this Court does not accept Provident's broad interpretation of First Union as requiring every party that alleges damages resulting, at least in part, from an Insurance Code violation to pursue administrative relief prior to filing a civil complaint when the legal action has already vested. See OCGA §§ 33-2-25; 50-13-2 (2); 50-13-13 (a) (1); see also Parris v. State Farm Mut. Auto. Ins. Co., 229 Ga. App. 522 (494 SE2d 244) (1997) (holding that a defendant's violation of the Insurance Code may result in tort liability when the plaintiff can demonstrate damages caused by the violation of a duty imposed by the Code); Hunnicutt v. Ga. Power Co., 168 Ga. App. 525, 526 (1) (309 SE2d 862) (1983). "The mere existence of an . . . administrative remedy does not, standing alone, afford a defendant an absolute defense to the institution of a legal action. Decisions to the effect that a failure to invoke administrative remedies precludes or renders premature a resort to the courts are based upon *statutes* which by *express terms or necessary implication* give to the administrative [agency] *exclusive jurisdiction* or which make the [pursuit or] exhaustion of administrative remedies a *condition precedent* to judicial action. A litigant is not required to [pursue] an *optional* administrative process before seeking redress to the courts." (Citations and punctuation omitted; emphasis in original.) Id. With the exception of the unsupported statement in *First Union*, supra at 228 (1), that "the Insurance Commissioner has exclusive authority to enforce the Insurance Code," we have found no Georgia statute or case law "from which it might be inferred that the [Insurance Commissioner] has exclusive or even primary jurisdiction" over such vested legal disputes. *Hunnicutt v. Ga. Power Co.*, supra at 526; but see *Turpeau v.*

*Fidelity Financial Svcs.*, 936 FSupp. 975 (N.D. Ga. 1996) (holding that a party alleging damages that directly resulted from a violation of OCGA § 33-31-4 must exhaust administrative remedies under the Insurance Code), aff'd, 112 F3d 1173 (11th Cir. 1997). Cf. *Mayor &c. of Savannah v. Savannah Cigarette &c.*, 267 Ga. 173, 174 (476 SE2d 581) (1996) (reaffirming a previous Supreme Court ruling that a party challenging rezoning *must* petition local authorities for relief prior to asking a court of equity to declare a zoning ordinance unconstitutional); *Bailey v. Wilkes*, 162 Ga. App. 410, 412-414 (291 SE2d 418) (1982) (determining that the legislature specifically established that the State Personnel Board had "special knowledge and experience" and, therefore, primary jurisdiction to resolve employee grievances and other employment controversies). Such cases deal with executive branch action or inaction, which are not appealable until there is an exhaustion of administrative remedies, which is a condition precedent to subject matter jurisdiction. Absent exhaustion of administrative remedies, no legal or equitable action vests.

In summary, the determination of whether a claim *must first* be brought through administrative channels still depends upon the nature of the claim and the requested relief. In contrast to the facts presented in *First Union*, the James family alleged in their complaint that Provident committed various torts against them and that they were damaged thereby. These tort claims only incidentally involve violations of the Insurance Code and are not dependent upon a finding of such violations.

Accordingly, the James family was not required to seek administrative remedies based upon alleged underlying violations of the Insurance Code prior to filing a civil suit in the Superior Court of Clarke County.[4] The trial court erred in granting Provident's OCGA § 9-11-12 (b) (1) motion to dismiss for lack of subject matter jurisdiction as to the tort claims.

*Judgment affirmed in part and reversed in part. McMurray, P. J., and Blackburn, J., concur.*

DECIDED SEPTEMBER 16, 1998 — 

*Troutman Sanders, Herbert D. Shellhouse, Norman L. Underwood, Alan W. Loeffler, Blasingame, Burch, Garrard, Bryant & Ashley, Andrew J. Hill III*, for appellants.

---

[4] Notably, an administrative procedure would not toll the running of the statute of limitation upon any vested tort or contract action.

*Hudson & Montgomery, James E. Hudson, William S. Stone, Kevin R. Dean*, for appellees.