A99A1835. GRIFFETH et al. v. PRINCIPAL MUTUAL LIFE INSURANCE COMPANY et al.
(533 SE2d 126)

POPE, Presiding Judge.

Charles S. and Linda Griffeth filed a consumer class action complaint asserting various claims against Principal Mutual Life Insurance Company arising out of the Griffeths' purchase of insurance. The Griffeths' complaint asserts that in 1993 they approached an insurance agent in an effort to obtain group insurance coverage. The agent told them that Principal offered a group health insurance policy to individuals, like the Griffeths, who were self-employed. The Griffeths applied and were accepted for the Principal insurance. Following several years of substantial increases in their monthly insur-

---

[3] Id. at 688-689 (1).
[4] Id. at 691 (2).

ance premiums, the Griffeths chose to cancel their Principal insurance policy in 1996.

Previously, in the fall of 1995, the Griffeths had complained to the Insurance Commissioner about the increasing premiums. In response to this complaint, the Commissioner's office sent Principal a letter expressing concern that the company was not complying with Georgia's small group pooling laws. In February 1996, the Commissioner's office notified Principal that it was referring the matter to its enforcement division for further action. In late 1996, Principal decided to terminate its coverage for all Georgia policyholders under the plan.

Shortly thereafter, the Griffeths filed their class action, asserting claims for fraud, Georgia Racketeer Influenced & Corrupt Organizations Act violation, and breach of contract against Principal. The Griffeths later amended their complaint to assert claims for unjust enrichment and conspiracy to aid and abet the breach of fiduciary duty. The complaint as amended alleges that Principal engaged in an illegal and fraudulent scheme to market group insurance policies that were, in effect, individual policies to farmers, small businessmen and other individuals. In furtherance of this scheme, the Griffeths allege that Principal set up an illusory trust to obtain a group policy that could be marketed to individuals. Then, instead of selling individual policies, the trust issued certificates to individuals like the Griffeths as members of the trust. The complaint also alleges that Principal misrepresented the nature of this policy in offering it to the public and committed various illegal and tortious acts, including violations of the Georgia Insurance Code, OCGA § 33-2-1 et seq.

The trial court held that the Georgia Insurance Commissioner had exclusive jurisdiction over the Griffeths' claims and dismissed the complaint for lack of subject matter jurisdiction. The trial court also found that the Griffeths were required to exhaust their administrative remedies before the Insurance Commissioner before filing an action in court. Because we find that the Griffeths were not required to pursue an administrative remedy, we reverse.

This case is controlled by this Court's decision in *Provident Indem. Life Ins. Co. v. James*, 234 Ga. App. 403 (506 SE2d 892) (1998), which involved similar allegations of a fraudulent insurance scheme. The Court held that the plaintiffs were not required to exhaust their administrative remedies before pursuing a class action even though the complaint alleged Insurance Code violations in support of the plaintiffs' RICO and common law tort claims. Id. at 408. With regard to the RICO claim, the Court stated:

[S]imply alleging Insurance Code violations does not transform a civil RICO complaint into a cause of action which

must be pursued exclusively through administrative channels, particularly when numerous other predicate acts are alleged in the complaint, including fraud.

Id. at 404-405. And the Court found that the plaintiffs' tort claims also stood on their own merits:

While it is true that the complaint alleges [Insurance Code] violations, as well as numerous other allegations of fraudulent behavior, the tort claims presented in this case are separate and distinct causes of action from an administrative proceeding directed solely at violations of the Insurance Code. Compare OCGA § 51-6-1 with OCGA § 33-6-4 (b).

Id. at 406. The Court found that the plaintiffs' tort causes of action "had fully vested as a legal action and not as an administrative action" and thus could be brought directly in court. Id. Accordingly, the Court reversed the trial court's dismissal of the complaint for lack of subject matter jurisdiction. Id. at 408. Cf. *Security Life Ins. Co. v. Clark*, 239 Ga. App. 690, 691 (521 SE2d 434) (1999)[1] (affirming $14.5 million verdict in RICO action based, in part, on similar allegations involving Insurance Code violations);[2] *Parris v. State Farm &c. Ins. Co.*, 229 Ga. App. 522, 525-526 (494 SE2d 244) (1997) (implying that cause of action may exist for violation of Insurance Code where plaintiff can prove damages).

As in *Provident*, here the Griffeths' RICO claim alleges various predicate acts including mail fraud, wire fraud, theft by taking, and theft by deception, and we find it was sufficient to withstand Principal's motion to dismiss. Similarly, we find that the Griffeths' common law claims are separate and distinct causes of action that may be pursued directly in court. Accordingly, the trial court had jurisdiction over this matter, and it was error to dismiss the complaint.

In arguing against this result, Principal relies upon our broad statement in *First Union Nat. Bank &c. v. Independent Ins. Agents &c.*, 197 Ga. App. 227, 228 (1) (398 SE2d 254) (1990) that "the Insurance Commissioner has exclusive authority to enforce the Insurance Code." But because that statement was not necessary to the holding in the case and the opinion cites no authority to support it, we find that the holding in *First Union* must be limited to the facts of that case. There, the plaintiff had asked the Insurance Commissioner to

---

[1] The Supreme Court of Georgia has granted certiorari in that case. *Security Life Ins. Co. v. Clark*, Case No. S00G0006 (2000).

[2] See our prior decision in *Security Life Ins. Co. v. Clark*, 229 Ga. App. 593 (494 SE2d 388) (1997), rev'd, 270 Ga. 165 (509 SE2d 602) (1998) for a more detailed statement of the underlying facts in that case.

investigate First Union's insurance-related activities. The Commissioner appointed an examiner to investigate First Union's activities, and the examiner's report concluded that the bank was not in violation of the Insurance Code. The Insurance Commissioner then sent a letter to the parties adopting the examiner's findings. The plaintiff later filed suit seeking a judicial determination of the same matters investigated by the Insurance Commissioner. Id. at 227. This Court held that the plaintiff was required to pursue the administrative procedures for contesting that decision. Id. at 228-229.

Unlike this case, the *First Union* plaintiff was asking the court to consider a matter previously decided by the Insurance Commissioner without following the proper procedures for seeking judicial review.[3] Here, the Griffeths are not seeking a review of an administrative action, but instead assert distinct legal causes of action. And as the Court stated in *Provident*: "With the exception of the unsupported statement in *First Union* . . . we have found no Georgia statute or case law from which it might be inferred that the Insurance Commissioner has exclusive or even primary jurisdiction over such vested legal disputes." (Citations and punctuation omitted.) 234 Ga. App. at 407. Therefore, nothing in the *First Union* decision prohibits the trial court from hearing the Griffeths' claims.

For the same reason, we find that *Cerulean Cos. v. Tiller*, 271 Ga. 65, 68 (2) (516 SE2d 522) (1999) is not controlling. In that case, the Supreme Court of Georgia required a plaintiff to exhaust the administrative review process before seeking a judicial interpretation of a Plan of Conversion that had already been reviewed and approved by the Insurance Commissioner. The Supreme Court recognized that "[l]ongstanding Georgia law" required that a party aggrieved by an agency decision must raise all issues before that agency and exhaust available administrative remedies before seeking judicial review of the decision. Id. at 66 (1).

In this case, however, there was no agency decision. Although the Griffeths and others complained to the Insurance Commissioner and the matter was to be referred to the enforcement division, Principal has conceded that the Insurance Commissioner never issued any formal finding or opinion on the matter. Therefore, the Griffeths are not parties aggrieved by an administrative decision, and they were not required to pursue any administrative review process before filing their lawsuit against Principal.

*Judgment reversed. Smith and Miller, JJ., concur.*

---

[3] The Insurance Code provides a specific procedure for obtaining judicial review of the Insurance Commissioner's actions. OCGA §§ 33-2-25 through 33-2-28.

622

DECIDED MARCH 29, 2000 — ▮▮▮▮▮▮▮▮

*Doffermyre, Shields, Canfield, Knowles & Devine, Kenneth S. Canfield, David S. Hagy, Edward W. Klein III,* for appellants.

*Troutman Sanders, Alan W. Loeffler, Lisa M. Beale, King & Spalding, Shannon F. Cox, Michael R. Smith, Liesa L. Bernardin,* for appellees.