## S01A0982. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY v. MABRY et al.

### (556 SE2d 114)

BENHAM, Justice.

Two policyholders[1] (hereinafter collectively, "Plaintiffs") brought an action for damages and injunctive relief against State Farm Mutual Automobile Insurance Company (hereinafter "State Farm"). Plaintiffs asserted in the "Breach of Contract" sections of their complaint that they had made first-party physical damage claims and that State Farm had failed to pay them part of the covered losses they sustained. The element of loss they alleged was covered by their policies, and that State Farm did not tell them about or pay, was the diminution in value of their vehicles caused by the fact of the physical damage. In the "Equitable Relief" section of the complaint, Plaintiffs asserted that State Farm, with knowledge of its contractual obligations, and pursuant to a scheme to avoid those obligations, had failed to establish a procedure for handling the diminution in value element of claims, had failed to inform its policyholders of that coverage, and had failed to pay Plaintiffs' claims. The Plaintiffs sought an order requiring State Farm to notify insureds of the coverage or to implement a procedure for handling diminution in value claims, and to honor its contractual obligation to pay diminution in value in first-party physical damage claims presented by its policyholders. Finally, the complaint sought certification of at least two classes of plaintiffs, one consisting of all former or current insureds of State Farm who presented first-party physical damage claims in the past six years, the "Breach of Contract Class," and one consisting of present insureds, the "Equitable Relief Class." After State Farm filed an answer and the parties engaged in discovery, the trial court issued an order certifying a class for declaratory and injunctive relief consisting of all current insureds under State Farm policies issued in Georgia. Following another hearing and further discovery, the trial court entered an order in December 2000 declaring that the law of Georgia requires that State Farm pay its first-party physical damage claimants for any diminution in value their cars sustain; that State Farm, once an insured reports a loss, evaluate the claim to determine whether the vehicle has sustained diminution in value; and that State Farm, at the conclusion of the adjustment and repair process, either affirm the presence of diminution in value and pay it, or deny the presence of diminution in value. That order also included an injunction by which State Farm was ordered to evaluate first-party physical damage claims for diminution in value "by an appropriate

---

[1] A third policyholder was subsequently added as a representative plaintiff.

methodology and procedure," and either offer to pay it or deny it; to collect, catalog, and maintain any information necessary to make a determination of diminution in value; and to report to the trial court the manner in which it complies with the order. This appeal is from the order certifying the class and the order granting declaratory and injunctive relief to Plaintiffs.

1. We turn first to State Farm's contention that the certification of a class of plaintiffs for declaratory and injunctive relief was improper. Specifically, State Farm asserts that bifurcation of the class into a declaratory and injunctive relief class and a damages class was improper, that there are no common issues for trial, and that individual issues predominate.

While Georgia's class action statute, OCGA § 9-11-23, does not by its terms provide for bifurcation of classes in a class action as does Federal Rule 23 (c) (4), the appellate courts of Georgia have relied on the federal rules when construing our statute. See *Ford Motor Credit Co. v. London*, 175 Ga. App. 33, 35 (332 SE2d 345) (1985) (noting adoption from federal rules of requirement of certification of class action). Although this Court found it unnecessary in *Tanner v. Brasher*, 254 Ga. 41, n. 5 (326 SE2d 218) (1985), to decide whether to follow federal precedent permitting the splitting of issues in certifying class action, the Court of Appeals suggested in *Trend Star Continental v. Branham*, 220 Ga. App. 781, n. 2 (469 SE2d 750) (1996), that a trial court could certify a class with respect to some counts of a complaint and not as to others. We agree with that suggestion for reasons which answer State Farm's other complaints about the certification of a class in this case: commonality of rights and issues. The issues for the declaratory and injunctive relief class in this case are whether Georgia law, as applied to the contract at issue, requires insurers to assess vehicles presented with first-party physical damages claims for diminution in value and, if found, pay it; and, if so, whether State Farm has sought to avoid that obligation. Those issues are common to all members of the class certified by the trial court, all of whom are policyholders. "Common questions of law and fact predominate, as in the instant case, when action is brought on behalf of purchasers of agreements from a common source, the character of the right sought to be enforced is common, and common relief is sought. [Cit.]" *Sta-Power Indus. v. Avant*, 134 Ga. App. 952, 954 (216 SE2d 897) (1975). Thus, contrary to State Farm's assertion on appeal, there are issues for trial common to the members of the class, and those issues predominate over any individual issues. By certifying a class of plaintiffs only for declaratory and injunctive relief, the trial court ensured that the class would possess the qualifications of a proper plaintiff class.

"On appellate review of a trial court's decision on a motion to cer-

tify a class, 'the discretion of the trial judge in certifying or refusing to certify a class action is to be respected in all cases where not abused.' [Cit.]" *Jones v. Douglas County*, 262 Ga. 317 (2) (418 SE2d 19) (1992). No abuse of discretion appears in the trial court's decision to certify a plaintiff class in this case.

2. We consider next State Farm's contentions that the trial court's rulings in this case infringe on the expertise of the Georgia Insurance Commissioner; that the Insurance Commissioner has exclusive jurisdiction over the issues here and the courts should defer to the Insurance Commissioner; and that Plaintiffs were required to exhaust administrative remedies before filing suit. State Farm argues that the imposition of specific claims handling procedures was improper because the Insurance Commissioner is charged with regulating claims handling procedures. That argument is factually faulty since the trial court's order did not impose specific claims handling procedures. The trial court's order required State Farm to include an evaluation of diminution in value in its standard assessment of damages, just as it evaluates other elements of damage, and to adopt a suitable methodology for doing so. Thus, the trial court's order did not mandate any certain claims handling procedure, only that State Farm start actually handling its claims in accord with its contract, without refusing to consider some elements of loss. Since Plaintiffs' claims do not require proof that State Farm has violated the Insurance Code, there is no exclusive jurisdiction in the Insurance Commissioner and no requirement that the courts defer to the Insurance Commissioner in this case. *Griffeth v. Principal Mut. Life Ins. Co.*, 243 Ga. App. 618 (533 SE2d 126) (2000); *Provident Indem. Life Ins. Co. v. James*, 234 Ga. App. 403 (506 SE2d 892) (1998). Where, as here, no administrative procedure has been invoked, exhaustion of administrative remedies is not required. See *Griffeth*, supra. Compare *Cerulean Cos. v. Tiller*, 271 Ga. 65 (2) (516 SE2d 522) (1999). Accordingly, there was no error in the trial court's rejection of State Farm's arguments regarding the jurisdiction or expertise of the Insurance Commissioner.

3. State Farm contends the trial court's declaratory judgment is infected with two errors. First, it argues that declaratory judgment is inappropriate because there are no circumstances necessitating the trial court's guidance with respect to Plaintiffs' future acts. The trial court relied on the provision in OCGA § 9-4-2 (b) permitting a declaration of rights when required by the ends of justice.

> [T]he respective superior courts of this State, under [OCGA § 9-4-2 (b)], have power to determine and settle by declaration any justiciable controversy of a civil nature where it appears to the court that the ends of justice require that

such should be made for the guidance and protection of the petitioner, and when such a declaration will relieve the petitioner from uncertainty and insecurity with respect to his rights, status, and legal relations.

*Calvary Independent Baptist Church v. City of Rome*, 208 Ga. 312 (3) (66 SE2d 726) (1951). This Court has held that use of a declaratory judgment action by insureds to determine the scope of policy provisions is in keeping with the purpose of the Declaratory Judgment Act (OCGA § 9-4-1 et seq.), i.e., to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations. *Atlantic Wood Indus. v. Argonaut Ins. Co.*, 258 Ga. 800 (2) (375 SE2d 221) (1989). The holding in *Allstate Ins. Co. v. Shuman*, 163 Ga. App. 313 (4), (6) (293 SE2d 868) (1982), cited by the trial court in the declaratory judgment portion of the order on appeal, is pertinent to the present case:

> The issue is certainly unsettled at the present time and resolution of the issue is certainly of manifest importance to the parties (as well as the insurance industry in general, as amici curiae so vigorously point out). . . . The issue at bar is a question of law and therefore can only be decided by a court of law. A trial would serve no useful purpose because the issue is purely legal. Moreover, it is an important issue, one that needs to be decided. Therefore, we hold that the ends of justice require that the court below render the declaratory judgment prayed for.

Second, State Farm contends that the trial court erred in entering declaratory judgment without affording State Farm the jury trial it demanded. A jury trial is proper in a declaratory judgment action "[w]hen a declaration of right or the granting of further relief based thereon involves the determination of issues of fact triable by a jury and jury trial is not waived. . . ." OCGA § 9-4-6. Where, however, a party sets forth no disputed facts, either at trial or on appeal, which required submission to a jury, there is no error in proceeding without a jury. *Aponte v. City of Columbus*, 246 Ga. App. 646 (4) (540 SE2d 617) (2000). In its request for jury trial, State Farm identified only two areas as to which it contended there was a factual dispute: State Farm's motivation in the manner in which it does business, and whether State Farm has breached its obligation to pay diminution in value to any persons. The trial court's order makes no specific finding on either of those issues, and State Farm has not identified on appeal any finding of fact as to which there was a conflict in the evidence which would require submission to a jury. Accordingly, there was no

error in the trial court's refusal to grant State Farm a jury trial. Id.

4. The basic conflict in the present case concerns the scope of State Farm's contractual promise to compensate its policyholders for their losses. The physical damage coverage in its policies provides that State Farm will "pay for loss to your car," minus any deductible. The policy contains a provision limiting State Farm's liability to the lower of the actual cash value of the vehicle or the cost of repair or replacement, and a provision giving State Farm the right to settle a loss by paying up to the actual cash value of the car or paying "to repair or replace the property or part with like kind and quality." That provision also requires that the policyholder pay for any "betterment" resulting from repair or replacement.

Plaintiffs contend that State Farm's duty under its policies, when a physical damage loss is reported by a policyholder, is to assess every element of that loss covered by the policy and to pay for the entire loss, the measure of which, they contend, is the difference between the value of the vehicle prior to the loss and its value after the loss. There is no question that paying the policyholder the amount of the vehicle's pre-loss actual cash value, which would be the result of a decision that the vehicle is a total loss, satisfies State Farm's duty under the policy. The conflict central to this case arises when State Farm determines that the vehicle is not a total loss and exercises its option to repair. Plaintiffs assert that in almost every case, a vehicle that has been damaged in a covered event will suffer some diminution in value, regardless of the efficacy of the repairs undertaken, and that State Farm is liable to the policyholder for the amount of that diminution in value.

State Farm asserts, however, that questions of value arise only when the vehicle is assessed as a total loss or when repairs cannot return the vehicle to its pre-loss condition in terms of appearance and function. When physical damage has been properly repaired, State Farm contends, there is no objectively discernible diminution in value, and if there were such a loss, it would not be realized until the vehicle was sold. State Farm also denies any duty to assess vehicles for diminution in value unless the insured specifically makes a claim, separate from the original claim of loss, that the vehicle has lost value even though the physical damage to it was repaired.

The trial court was presented, therefore, with the following questions in the declaratory judgment portion of this case: whether the fact of physical damage resulting from an event covered by the policy reduces the value of a vehicle, even if repairs return it to pre-loss condition in terms of appearance and function; if so, whether the policies issued by State Farm obligate it to compensate its policyholders for that loss of value, or permit it to discharge its responsibility under the policy by making repairs that return the vehicle to pre-loss condi-

tion in terms of appearance and function; and if State Farm is obligated to pay its policyholders for diminution in value, whether it is required to assess that element of loss along with the elements of physical damage when a policyholder makes a general claim of loss.

The first question, whether diminution in value occurs even when physical damage is properly repaired, is one of fact. The trial court found that there is a potential for a diminution in value loss in every event of loss, and that diminution in value can occur even when a vehicle is repaired properly. In support of those findings, the trial court relied primarily upon documents produced by State Farm during discovery and upon the testimony of State Farm's witnesses. The documents from State Farm acknowledged that there is a common perception that a wrecked vehicle is worth less simply because it has been wrecked. Witnesses for State Farm testified that a potential for diminution in value exists in every automobile accident, and that the public perceives a loss of value in any wrecked vehicle and would choose an unwrecked vehicle over a wrecked one, assuming the vehicles are otherwise the same. "Based on that evidence, the trial court's findings are not clearly erroneous and must, therefore, be accepted by this court as correct. [Cit.]" *Delta Cascade Partners II v. Fulton County*, 260 Ga. 99, 100 (390 SE2d 45) (1990).

The next question, whether State Farm is required to pay for diminution in value as a part of its physical damage coverage, is a matter of contract construction and is, therefore, one of law. *Magnetic Resonance Plus v. Imaging Systems Intl.*, 273 Ga. 525, 526 (543 SE2d 32) (2001). State Farm contends that its only obligation under the contract of insurance, when it elects to rely on the limitation of liability provision, is to pay for repairs which return the vehicle to its pre-loss condition. Plaintiffs contend that the policy of insurance requires State Farm to compensate them for their entire loss, to make them whole, and that when State Farm elects to repair the vehicle, it is also obligated to pay for any diminution in value that may occur.

As the Court of Appeals noted in *Hartford Fire Ins. Co. v. Rowland*, 181 Ga. App. 213 (1) (351 SE2d 650) (1986), the question of an insurer's obligation to pay for diminution in value under the physical damage coverage of automobile policies is not one of first impression. The basic holding establishing the measure of damages and the effect of a limitation of liability provision appeared 75 years ago in *U. S. Fidelity & Guaranty Co. v. Corbett*, 35 Ga. App. 606 (1) (134 SE 336) (1926), where the Court of Appeals held that

the undertaking of the company to insure the owner against "actual loss or damage" must be taken as the primary obligation, under which the measure of the liability would be the difference between the value of the property immedi-

ately before the injury and its value immediately afterwards [cit.]; and the stipulation that the liability should not exceed the cost of repair or replacement must be construed as a subordinate provision, limiting or abating the primary liability, to be pleaded defensively if the insurer would diminish or limit the amount of recovery by reason thereof.

The reasoning of the Court of Appeals in that case was expressly adopted by this Court in *Dependable Ins. Co. v. Gibbs*, 218 Ga. 305, 315 (127 SE2d 454) (1962). The Court of Appeals addressed the issue again in *Simmons v. State Farm Mut. Auto. Ins. Co.*, 111 Ga. App. 738 (2) (143 SE2d 55) (1965), clarifying the effect of a limitation of liability clause:

> "[T]he defendant insurance company here had an option to pay for the loss in money, to repair the vehicle, or to replace it with other property of like kind and quality, but the contract requires that no matter which alternative is chosen, the market value of the property plus $100 [deductible] after payment must equal the market value before the loss. This is the rule generally with this type of policy."

Although the *Simmons* case clearly held that the measure of damages is based on value, the Court of Appeals found it necessary four years later in *State Farm Mut. Auto. Ins. Co. v. Smith*, 119 Ga. App. 447, 448 (1) (167 SE2d 610) (1969), to reiterate that point and to distinguish "condition" from "value." There, the insured contended that the car could not be repaired in such a way as to return it to its previous value, while State Farm claimed that its limitation of liability only required it to return the car to pre-loss condition, and that repairs could do that. The policy language relied upon by State Farm provided that

> [t]he limit of . . . liability . . . shall not exceed the actual cash value of the property . . . at time of loss, nor [sic] what it would then cost to repair or replace such property with other of like kind and quality, less depreciation and deductible amount applicable. . . . The company may at its option pay for the loss in money or may repair or replace the property. . . .

The Court of Appeals explained State Farm's contractual duty and the effect of an election to repair:

> The obligation of an insurer under a contract containing such language as is set forth above, where the insurer elects

to repair, is "to pay for the loss caused by collision and . . . the correct measure of that loss would be the difference in the market value of the automobile immediately before the collision and . . . its market value immediately after being repaired. . . ." [Cits.] Thus an insurer under a policy such as the one in this case has three basic options, to wit: (1) To replace the property with other of like kind and quality less depreciation and deductible, (2) pay the loss in money (the loss being the difference in the market value measured immediately before and after the collision), less any deductible, or (3) if the insurer elects to repair it may do so, but to the extent that repairs do not restore to the market value immediately before the collision, the insurer is obligated to compensate for the difference, the total liability reduced by any deductible. The insured must be made whole, except for any deductible, under any option.

Id. When the Court of Appeals next revisited the issue, it spoke specifically of adding diminution in value to the cost of repairs:

There was substantial evidence from both the plaintiff's and the defendant's witnesses that a car damaged to the extent this vehicle was could not be repaired to restore its value prior to the accident. In such a case depreciation in market price should be added to cost of repairs, or the property or its value replaced, so that the insured will be made whole.

*Ga. Farm Bureau Mut. Ins. Co. v. Lane*, 129 Ga. App. 166 (3) (199 SE2d 273) (1973). The Court of Appeals touched on the appropriate measure of damages again in *Travelers Indem. Co. v. Cumbie*, 128 Ga. App. 723 (2), (3) (197 SE2d 783) (1973), noting that the basic measure, the difference between pre-loss value and post-loss value, was modified by an election to repair so that the measure would be the difference between pre-loss value and post-repair value. The meaning of "repair" was key to the next case in which the Court of Appeals applied the basic rules it had stated in 1926. In *U. S. Fire Ins. Co. v. Welch*, 163 Ga. App. 480 (294 SE2d 713) (1982), the insurer insisted that its policy gave it the right to pay for repairs only without regard to the value of the vehicle. The Court of Appeals rejected that argument: "Appellant misconstrues the meaning of repair in the limit of liability provision as meaning any repair. We construe repair to mean restoration of the vehicle to substantially the same condition and value as existed before the damage occurred." Id. at 481. Finally, the Court of Appeals addressed these issues again in *Hartford Fire Ins. Co. v. Rowland*, supra, reiterating the principles developed in

this line of cases and upholding a jury verdict for diminution in value and for statutory penalties for failing to pay diminution in value. The foregoing review of Georgia case law establishes clearly that value, not condition, is the baseline for the measure of damages in a claim under an automobile insurance policy in which the insurer undertakes to pay for the insured's loss from a covered event, and that a limitation of liability provision affording the insurer an option to repair serves only to abate, not eliminate, the insurer's liability for the difference between pre-loss value and post-loss value.

State Farm argues, however, that these cases do not apply to it because the language of its limitation of liability is different and because the diminution in value to which the cases refer is only that diminution in value which results from repairs which do not return the vehicle to its pre-loss condition. The assertion that the language of the limitation of liability provision in State Farm policies is sufficiently different than that in earlier cases that the long-standing interpretations set forth above do not apply is inconsistent with the holdings in *Rowland*, supra, and *Welch*, supra. Both of those cases involved limitation of liability provisions framed in terms of "lesser" (*Welch*) or "smaller" (*Rowland*) amounts, and in each case the Court of Appeals held that the language of the limitation provisions did not distinguish that case from previous cases on the subject. An interpretation more in keeping with State Farm's appears in a dissenting opinion in *Canal Ins. Co. v. Bryant*, 173 Ga. App. 173 (325 SE2d 839) (1984), but was rejected by the majority.

State Farm's argument that the diminution in value recovery which is authorized by case law is only that which results from inadequate repairs is likewise not supported by the decisions. In *Corbett*, supra, there was no suggestion of defective repair; in fact, no repair was undertaken. In *Dependable*, supra, although this Court commented that the measure of damages it stated was the appropriate standard in cases in which the insurer undertook to repair and did so defectively, there is nothing in the opinion to suggest the case involved defective repairs or that the measure of damages stated was applicable only to that situation. There had been no repairs undertaken in *Simmons*, supra, and the Court of Appeals rejected the notion that paying the insured the amount of an estimate, in the absence of "an uncontradicted showing by one or the other that a given sum of money will restore the market value of the vehicle to its former level," would meet State Farm's obligation. The evidence in *Smith*, supra, was that the car could not be returned to its former value by repairing it. That does not equate to inadequate repairs because the same words would describe a car which was adequately repaired, but had lost value solely because it had been in a wreck. In fact, State Farm took the position in that case that the car could be

returned to its former condition, but the court rejected that position and required use of value, not condition, as the measure. *Lane*, supra, was not a defective repair case, but one in which the insurer asserted that paying for repairs would meet its obligation even though the evidence of both parties showed that repairs would not return the car to its pre-loss value. *Cumbie*, supra, was a defective repair case, but the measure of damages is the same. From the emphasis used in a quote in *Cumbie* ("The measure of damages is stated in *Dependable* to be that which obtains 'under an automobile policy *where the insurer has elected to make repairs* and did so defectively.' (Emphasis supplied.)" *Cumbie*, supra at 725), it is apparent that the court's decision in that case relied more on the fact that the insurer had elected to repair than on the fact that the repairs were inadequate. In *Welch*, supra, the car was repaired and there is no argument that the repairs were defective, only that they could not return the car to its pre-loss value. Likewise, *Rowland*, supra, was not a defective repair case, only one in which the evidence showed diminution in value after repair.

State Farm also asserts in this appeal that the trial court is essentially imposing a tort measure of damages rather than that measure appropriate to a contract. That assertion disregards the holdings in the cases discussed above. The first words of the first case in that line make clear that these are contract cases and the measure of damages comes from the contract.

> In an action by the owner of personal property, such as an automobile, to recover for loss or damage sustained by him as a result of a tortious injury thereto, the measure of damages is to be determined under general principles of law. [Cit.] But in a suit on a contract, as a policy of insurance, whereby the owner is insured against actual loss or damage to an automobile by collision, the measure of the insurer's liability will be determined according to the terms of the contract.

*Corbett*, supra at 610. Most recently, in *Rowland*, supra, the Court of Appeals spoke of the interpretation of contracts when considering the insurer's obligations. The argument that the trial court is using an inappropriate measure of damages to describe State Farm's obligations is without merit.

We recognize that there is a split of authority regarding an insurer's liability for any loss of value resulting from a covered loss event. See 43 ALR2d 327, "Measure of Recovery by Insured Under Automobile Collision Insurance Policy." Some jurisdictions, for instance, have chosen to define "repair" more narrowly. See, e.g.,

*Siegle v. Progressive Consumers Ins. Co.*, 788 S2d 355 (Fla. Ct. App. 2001) (certifying to Florida Supreme Court question of insurer's liability under collision coverage for diminution in market value). Others have determined that diminution in value is not an element of loss under policies such as those involved in this case. See *Bickel v. Nationwide Mutual Ins. Co.*, 206 Va. 419, 423 (143 SE2d 903) (1965). Georgia, however, has been consistent in interpreting the physical damage coverage of automobile insurance policies to require that the insured be made whole, basing the measure of damages on the value of the vehicle. For other jurisdictions following that rationale, see 43 ALR2d 327, supra at 346.

Having reviewed both Georgia law and that of other jurisdictions, we adhere to the long-standing contract interpretation set forth in the Georgia decisions discussed above. The rationale of those cases remains solid: the insurance policy, drafted by the insurer, promises to pay for the insured's loss; what is lost when physical damage occurs is both utility and value; therefore, the insurer's obligation to pay for the loss includes paying for any lost value. That interpretation has stood for 75 years in Georgia and has become, therefore, part of the agreement between the parties when they enter into a contract of insurance which includes the promise to pay for the insured's loss. *Magnetic Resonance Plus*, supra at 527 (2). Thus, our holding in this case that State Farm is obligated to pay for diminution in value when it occurs is based in reason, precedent, and the intent of the parties. Recognition of diminution in value as an element of loss to be recovered on the same basis as other elements of loss merely reflects economic reality.

Finally, the question of whether State Farm is required to assess for diminution in value without a specific claim for that element of loss, is a matter of the contract between the parties, interpretation of which is a question of law. Id. at 526. State Farm's insurance policy includes a provision outlining the duties of the insured in reporting a claim. Those duties which are pertinent to the evaluation of the insured's loss are that the insured report the "accident or loss" as soon as reasonably possible, including the time, place, and circumstances of the accident or loss; that the insured protect the damaged vehicle; that the insured show the insurer the damage; and that the insured provide all records, receipts, and invoices. Nothing in the insurance policy requires the insured to assert a right to recover any particular element of damage. If the policy does not require the insured to claim separately such items as damage to tires or damage to bodywork, it stands to reason that the policy does not require a separate claim for diminution in value.

State Farm argues that the imposition on it of a requirement that it evaluate all first-party damage claims for diminution in value

was error because the requirement is based on the incorrect premise that diminution in value is a proper element of loss to be recovered under State Farm's policies and because nothing in its policy gives an insured the right to insist on any particular claims handling procedure. The first assertion is controlled by our holding above that State Farm's policy does cover diminution in value as an element of loss. The second assertion fails because, as noted in Division 2, supra, the trial court has not imposed any particular claims handling procedure, but has merely required that State Farm handle all elements of loss in each claim. The trial court's construction of the contract of insurance to require State Farm, not the insured, to determine all the elements of loss in each claim is consistent with the language of the contract with regard to the relative duties of the parties to that contract.

In summary, we conclude that the trial court correctly answered the questions presented by the declaratory judgment portion of this case: the fact of physical damage resulting from an event covered by the policy can reduce the value of a vehicle, even if repairs return it to pre-loss condition in terms of appearance and function; the policies issued by State Farm obligate it to compensate its policyholders for that loss of value, notwithstanding repairs that return the vehicle to pre-loss condition in terms of appearance and function, if the repairs do not return the vehicle to its pre-loss value; and State Farm is obligated to assess that element of loss along with the elements of physical damage when a policyholder makes a general claim of loss.

5. We turn finally to a consideration of the trial court's grant of injunctive relief. In support of its contention that the trial court erred in issuing an injunction, State Farm has set forth an argument based on the standards for granting an interlocutory injunction. However, the injunction issued in this case does not perform the function of an interlocutory injunction. " '(T)he sole purpose for granting interlocutory injunctions is to preserve the status quo of the parties pending a final adjudication of the case. (Cit.) "(A)n interlocutory hearing is designed to balance the conveniences of the parties pending a final outcome of the case." ' [Cit.]" *Poe & Brown of Ga., Inc. v. Gill*, 268 Ga. 749, 750 (492 SE2d 864) (1997). The injunction in the present case is not intended to preserve the status quo pending a final adjudication nor to balance conveniences pending a final outcome, but to require a party to perform contractual duties which the trial court has declared that party is obligated to perform. That is the function of a permanent rather than interlocutory injunction. *Stephens v. Geise*, 226 Ga. 639, 641 (176 SE2d 923) (1970). Because it requires action that can affect the rights of parties, the order constitutes the grant of a mandatory injunction. *Glynn County v. Waters*, 268 Ga. 500 (1) (491 SE2d 370) (1997). We discussed the appellate review of such injunc-

tions in *Prime Bank v. Galler*, 263 Ga. 286 (4) (430 SE2d 735) (1993):

> Equitable relief is generally a matter within the sound dis-
> cretion of the trial court. [Cit.] The action of the trial court
> should be sustained on review where such discretion has not
> been abused. [Cit.] However, in determining whether there
> has been an abuse of discretion, the conveniences of the par-
> ties cannot be ignored. [Cit.] . . . A mandatory injunction is
> an extraordinary remedy, one of the most powerful a court
> can issue. It is for that reason called the "strong arm of
> equity." [Cit.] " 'There is no power the exercise of which is
> more delicate, which requires greater caution, deliberation,
> and sound discretion, or is more dangerous in a doubtful
> case, than the issuing of an injunction.' " [Cit.] It should be
> crafted in a manner that is the least oppressive to the
> defendant while still protecting the valuable rights of the
> plaintiff.

We have upheld above the trial court's declaration of the rights and
duties of the parties. Since the trial court found that State Farm has
a duty to evaluate all first-party physical damage claims for the exis-
tence of diminution in value, requiring State Farm to perform that
duty is no abuse of discretion. The trial court also ordered State
Farm to develop an appropriate methodology for making such evalu-
ations; to collect, catalog, and maintain any information necessary to
determine the amount of any diminution in value; and to report to
the court the manner in which it was complying with the injunction.
Requiring the development of an appropriate methodology was nec-
essary since the undisputed evidence shows that State Farm had no
such methodology in use. Permitting State Farm to develop its own
methodology rather than imposing one is the least oppressive means
of accomplishing that necessary task. Requiring State Farm to col-
lect, catalog, and maintain information needed to make diminution
in value evaluations was necessary because State Farm had admitted
it did not collect information for that purpose, and was not oppressive
because, as the trial court found, State Farm already collected and
maintained such information for other purposes, including initial
determinations of the actual cash value of cars in the course of decid-
ing whether to declare the car a total loss, and the determination
whether repairs resulted in "betterment" for which an insured would
be charged by State Farm. Given the latitude the trial court allowed
State Farm in developing its own procedures for complying with the
basic requirement that it evaluate all claims for the presence of dimi-
nution in value, the reporting requirement was appropriate to allow
the trial court to ensure that its mandate was being followed. That

requirement is less oppressive to State Farm than other options for ensuring compliance such as the placement of court-appointed monitors to oversee compliance. Given those factors, we conclude that the trial court appropriately considered the convenience of the parties, chose the least oppressive means of ensuring performance of State Farm's contractual duties, and did not, therefore, abuse its discretion in ordering injunctive relief.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 28, 2001.

*Powell, Goldstein, Frazer & Murphy, E. A. Simpson, Jr., Linda G. Birchall, Page, Scrantom, Sprouse, Tucker & Ford, W. G. Scrantom, Jr.,* for appellant.

*Pope, McGlamry, Kilpatrick & Morrison, Charles N. Pope, Michael L. McGlamry, Paul Kilpatrick, Jr., Wade H. Tomlinson III, Elizabeth P. Holmes, William U. Norwood III, Sutherland, Asbill & Brennan, John A. Chandler, Carey P. DeDeyn, Teresa W. Roseborough, Hatcher, Stubbs, Land, Hollis & Rothschild, James E. Humes II, William B. Hardegree, C. Ronald Ellington,* for appellees.

*Hawkins & Parnell, Michael J. Goldman, H. Lane Young II, Buchanan & Land, Benjamin A. Land, Clay D. Land, Walker, Hulbert, Gray & Byrd, Charles W. Byrd, Groover & Childs, Duke R. Groover, Frank H. Childs, Jr., Troutman Sanders, Herbert D. Shellhouse, Alan W. Loeffler, King & Spalding, Dwight J. Davis, S. Stewart Haskins,* amici curiae.