S99A0667. CERULEAN COMPANIES, INC. et al. v. TILLER et al.
(516 SE2d 522)

FLETCHER, Presiding Justice.

This case arises out of the conversion of Blue Cross and Blue Shield of Georgia, Inc. from a nonprofit company to a for-profit company. The issue before this Court is whether Harrell Tiller and the other plaintiffs below were required to exhaust administrative remedies before seeking equitable relief in superior court. Because the plaintiffs are seeking an interpretation of the Plan of Conversion and because the Commissioner of Insurance reviewed the Plan, approved it, and participated in the conversion process after approval, we hold that the parties must follow the administrative review process before seeking judicial review. Therefore, the trial court erred in deciding the merits and we reverse.

In 1995 Blue Cross sought to convert from a nonprofit corporation to a for-profit corporation pursuant to OCGA § 33-20-34. As part of the conversion process Blue Cross created Cerulean Companies, Inc. as its parent company and developed the Plan for approval by the insurance commissioner. In order to establish owners of the new for-profit company, Blue Cross decided to offer each of its "Eligible Subscribers" five shares of Class A stock in Cerulean. Blue Cross structured the offer of shares in the way it believed would minimize potential tax liability to subscribers receiving shares. Following staff investigation and a public hearing, the commissioner issued an order permitting Blue Cross to implement the conversion process as set forth in the Plan.

In May 1996, pursuant to the Plan, Blue Cross sent a prospectus and election form to each of its approximately 144,000 eligible subscribers and offered each subscriber five shares of Cerulean stock. To accept the offer, the eligible subscribers were required to check a box on a card and return the card to Blue Cross in a prepaid envelope. Blue Cross followed up the initial mailing with additional brochures and telephone calls. Additionally, the insurance commissioner set up a tollfree number for information about the conversion, contacted employers with insured employees asking that a notice about the offer and deadline for acceptance be posted, and issued a news release calling the offer an "extraordinary opportunity" and stating that he was "confident that many Georgians will accept [the Cerulean stock]." Over 74,000 of the eligible subscribers did accept and became Cerulean shareholders. Approximately 12,000 expressly

declined the offer and approximately 58,000 made no response.

Two years later, in July 1998, Cerulean announced that it was merging with WellPoint Health Networks, Inc. As part of this merger, the 70,000 holders of Cerulean stock will receive cash or publicly traded WellPoint stock worth approximately $4,000. Harrell Tiller and the other plaintiffs, representing a class of the approximately 70,000 Blue Cross subscribers who either made no response or expressly declined the offer of Cerulean stock, brought a declaratory judgment action to establish that they are holders of Cerulean stock and thus able to receive cash or WellPoint stock in the merger.[1] In its December 17, 1998 order, the trial court held that as part of the conversion Blue Cross was required to distribute Cerulean stock to each eligible subscriber and was not authorized to give eligible subscribers the option of accepting or declining the offer of stock. The trial court enjoined Cerulean from taking any action inconsistent with its order.

1. Long-standing Georgia law requires that a party aggrieved by a state agency's decision must raise all issues before that agency and exhaust available administrative remedies before seeking any judicial review of the agency's decision.[2] As long as there is an effective and available administrative remedy, a party is required to pursue that remedy before seeking equitable relief in superior court.[3]

The courts of this state have previously held that orders of the insurance commissioner fall within the doctrine of exhaustion of administrative remedies.[4] There is no dispute that the commissioner's order approving the Plan was subject to judicial review and that no eligible subscriber appealed within the 30-day deadline.[5] The passing of this deadline, however, did not extinguish the availability of administrative remedies. Even after Blue Cross began its mailings to the eligible subscribers, any subscriber who contended that Blue Cross should not have given the option of declining the shares could have sought a hearing and decision under OCGA § 33-2-17 and appealed the commissioner's order to superior court.[6] Furthermore, a subscriber had the option of seeking a declaratory ruling under state regulations[7] as to whether Blue Cross was properly carrying out the

---

[1] The appellees raised additional claims that have not been adjudicated below and are not now before this Court.

[2] OCGA § 50-13-19 (a). *Brogdon v. State Board of Veterinary Medicine*, 244 Ga. 780, 781 (262 SE2d 56) (1979).

[3] *Moss v. Central State Hospital*, 255 Ga. 403, 404 (339 SE2d 226) (1986).

[4] See *First Union Nat'l Bank of Georgia v. Independent Ins. Agents of Georgia*, 197 Ga. App. 227, 228 (398 SE2d 254) (1990).

[5] See OCGA § 33-2-26.

[6] See OCGA § 33-2-26 et seq.

[7] See Ga. Comp. R. & Regs. r. 120-2-2-.05.

Plan. The procedure for such declaratory rulings requires the commissioner to respond within 30 days of a petition being filed. Finally, even after the completion of the offer and the issuance of the Cerulean shares to subscribers who responded, the commissioner retained authority over Cerulean under OCGA § 33-13-1 (4) because Cerulean admits that it is an "insurance holding company system." These provisions make clear that administrative remedies were available for resolution of the disputed issue regarding the proper interpretation of the Plan.

The rationale for requiring exhaustion of administrative remedies is that resort to the administrative process will permit the agency to apply its expertise, protect the agency's autonomy, allow a more efficient resolution, and result in the uniform application of matters within the agency's jurisdiction.[8] This rationale is amply illustrated here. The Georgia legislature entrusted the insurance commissioner with overseeing the process of conversion of any nonprofit insurance company to a for-profit business corporation.[9] OCGA § 33-20-34 requires the commissioner to determine whether the proposed conversion is "in the best interest of the company, its policyholders, and the general public" and authorizes the commissioner to promulgate any rules and regulations necessary for implementation. Thus, the legislature endowed the commissioner with broad review powers over any proposed conversion. The commissioner's wide authority in this area can be respected only if courts decline the invitation to interpret various clauses and terms of an approved conversion plan. Such interpretation is the province of the commissioner subject to judicial review as provided by statute.

For example, the parties argue extensively about the use and meaning of the words "offer" and "issue" in the Plan and hold diametrically opposed views regarding the manner in which Blue Cross was required to make the stock offer. The commissioner conducted a staff review of the Plan, held a public hearing at which his staff attorney questioned witnesses, and participated in the conversion process following the approval of the Plan. The length and depth of the agency involvement strongly suggests that the commissioner has an understanding of the disputed terms. Therefore, pursuit of administrative remedies would be more efficient because of the agency's prior extensive involvement. Additionally, requiring resort to the administrative forum to resolve this dispute is the only way to carry out the legislature's policy decision that the conversion process is within the commissioner's purview.

---

[8] See Kenneth C. Davis and Richard J. Pierce, Jr., *Administrative Law Treatise*, § 15.2 at 309 (3d ed.); Frank E. Cooper, 2 *State Administrative Law* 563 (1965).

[9] OCGA § 33-20-34.

Another example that shows the danger of circumventing the commissioner concerns the tax consequences of the conversion for the subscribers. Blue Cross presented expert evidence that subscribers would have had a very high risk of tax liability if Blue Cross simply distributed the shares and allowed subscribers to return shares if they did not want them. The trial court's conclusion that a direct distribution of shares was required despite the tax liability may overturn the commissioner's policy decision that lessening the tax risk was in the policyholders' best interest. Furthermore, in any future conversion the commissioner's review power will be constricted because the precedent of the present case will require a company to effect a distribution without giving the policyholders the option of not receiving the shares. In that case a company will be unable to give policyholders the option of declining the shares even if the commissioner determines that because of potential tax consequences an option is in the policyholders' best interests. Such a usurpation of the commissioner's authority is contrary to the statutory scheme.

2. The trial court held that it had authority to construe the Plan because trial courts have the power to interpret insurance policies. This analogy is flawed for several reasons. First, the trial court's rationale would mean that any company that makes regulatory filings could not rely upon the finality of agency approval until the six-year statute of limitations for contracts expired.[10] Introducing a high level of uncertainty is contrary to the orderly scheme of administrative law. Second, the Plan expressly states that it will not alter or affect the existing policies of the eligible subscribers. Third, the Plan is not an agreement between Blue Cross and its subscribers and thus has no resemblance to a contract of insurance between an insurance company and an insured. Fourth, the Plan was subject to approval or rejection by the commissioner and once the commissioner approved the Plan, it became a contract between the commissioner and Blue Cross and was subject to enforcement between those two parties only.[11] Fifth, unlike tariffs that establish approved pricing structures and relate to the services being provided, the Plan contains no restrictions on the premiums Blue Cross may charge and has no relation to Blue Cross's insurance policies.[12]

Because the plaintiffs below had available administrative remedies that they failed to exhaust, the trial court erred in considering

---

[10] See OCGA § 9-3-24.

[11] See *Georgia Pub. Serv. Comm'n v. Alltel Ga. Communications Corp.*, 227 Ga. App. 382, 386 (489 SE2d 350) (1997) (following PSC order, Alltel sought judicial review of interpretation of regulatory plan that provided for series of commitments between Alltel and PSC), *aff'd*, 270 Ga. 105 (505 SE2d 218) (1998).

[12] See, e.g., *State Farm Fire & Cas. Co. v. Southern Bell Tel. & Tel. Co.*, 245 Ga. 5 (262 SE2d 895) (1980); *Walker v. Bituminous Cas. Corp.*, 74 Ga. App. 517 (40 SE2d 228) (1946).

and ruling upon the claims.

*Judgment reversed. All the Justices concur, except Benham, C. J., who dissents.*

DECIDED MAY 3, 1999.

*Hull, Towill, Norman, Barrett & Salley, David E. Hudson, Long, Aldridge & Norman, Bruce P. Brown, Lawrence A. Slovensky,* for Cerulean Companies.

*Sims, Moss, Kline & Davis, Jerry L. Sims, Brownstein & Nguyen, Jay D. Brownstein, Paine Little, Travers W. Paine III, Kevin S. Little, Bell & James, John C. Bell, Jr., Pamela S. James, James L. Bentley III,* for Tiller et al.

*Dawson & Huddleston, Pat Huddleston II, Walbert & Mathis, Charles A. Mathis, Jr.,* for Blue Cross.

*Troutman Sanders, Norman L. Underwood, Mark H. Cohen,* amicus curiae.