A00A0872. BLUE CROSS & BLUE SHIELD OF GEORGIA, INC. et al. v. DEAL et al.
A00A0873. OXENDINE v. DEAL et al.
A00A0874. BLUE CROSS & BLUE SHIELD OF GEORGIA, INC. et al. v. TILLER et al.
A00A0875. OXENDINE v. TILLER et al.
(536 SE2d 590)

BLACKBURN, Presiding Judge.

In this action concerning distribution of shares in a newly formed for-profit corporation, the Commissioner of Insurance of the State of Georgia, Blue Cross & Blue Shield of Georgia, Inc., and Cerulean Companies, Inc. appeal the trial court's reversal of an order by the Commissioner finding that Harrell Tiller and a class of other plaintiffs similarly situated[1] were not entitled to a declaratory judgment that they owned shares of stock in Cerulean, the new corporation. As the Superior Court of Richmond County failed to follow the guidance of our Supreme Court in this matter and lacked subject matter jurisdiction, we vacate its order.

This is the second appearance of this case in the appellate courts of Georgia. In its first appearance, our Supreme Court rejected the trial court's analysis and reversed an almost identical ruling by the same judge in the Superior Court of Richmond County based on the parties' failure to exhaust administrative remedies. The following facts track those set forth in the prior Supreme Court opinion. See *Cerulean Cos. v. Tiller,* 271 Ga. 65 (516 SE2d 522) (1999).

In 1995, Blue Cross initiated the process to convert itself from nonprofit to for-profit status pursuant to OCGA § 33-20-34. As part of this statutory conversion, Blue Cross created Cerulean Companies to be its for-profit alter ego and to act as a holding company for its assets. On October 30, 1995, Blue Cross sought approval of its Plan of Conversion with the Commissioner as required by the Georgia Code, and, following extensive review and a hearing, the Commissioner issued an order allowing the conversion on December 27, 1995.

At the moment that the Commissioner approved the Plan of Con-

---

[1] The claims brought by Charlie Deal and Olean Lokey, in general, are identical to those brought by Tiller. Deal and Lokey, however, contend that they never received any notice of Blue Cross's conversion, while Tiller makes no similar argument.

version, "it became a contract between the [C]ommissioner and Blue Cross and was subject to enforcement between those two parties only." *Tiller*, supra at 68 (2). As such, any review sought by the eligible members regarding the Plan following this point in time would be limited to the propriety of the stock distribution according to the Commissioner's understanding of the Plan. No further actions regarding the structure or makeup of the Plan itself would be proper.

As part of the conversion, Blue Cross had to develop a Plan to establish owners or shareholders of its new for-profit incarnation, Cerulean, the terms and implementation of which were approved by the Commissioner for the protection of potential shareholders, following a hearing on these issues. Blue Cross sent a prospectus and election form to its approximately 144,000 "Eligible Subscribers" and offered each of them five shares in Cerulean at no cost. In order to minimize potential tax liability to its subscribers as established by expert testimony at the hearing, Blue Cross gave them the option of accepting or rejecting the shares. To accept share distribution, a subscriber was required to check a box on an election form and return it in a prepaid envelope by August 12, 1996. To reject the offer, subscribers could either return the election form indicating their rejection or simply do nothing.

In order to facilitate the orderly progression of the election process and to ensure that all eligible subscribers were aware of the opportunity, Blue Cross sent out additional brochures after mailing the election form and made follow-up phone calls to its eligible subscribers. In addition, the Commissioner issued a news release concerning the conversion, asked employers of groups of subscribers to post notices about the conversion, and established a conversion information hotline. Approximately 74,000 of Blue Cross's eligible subscribers accepted the stock offering, 12,000 expressly declined, and 58,000 failed to respond.

Within 30 days of the approval date of the Plan of Conversion, any eligible subscriber could have appealed the Commissioner's order of approval and implementation. See OCGA § 33-2-6. In addition, any subscriber who disagreed with the method of stock distribution employed could have requested a hearing before the Commissioner during the distribution. OCGA § 33-2-17. No subscriber, including Tiller, Deal, or Lokey, chose to avail himself of any of these remedies. Instead, they remained silent during the entire distribution process, through its culmination.

Approximately two years later, Cerulean announced details of its impending merger with WellPoint Health Networks, Inc. Pursuant to this merger, the 74,000 holders of Cerulean stock would receive either cash or WellPoint stock worth approximately $4,000. After learning about the merger, Tiller, Deal, Lokey, and other Blue

Cross subscribers, all of whom had either specifically rejected the stock offering or failed to act thereon, brought a declaratory judgment action in the Superior Court of Richmond County to establish themselves as holders of Cerulean stock with a right to proceeds from the merger, notwithstanding the fact that OCGA § 33-2-27 requires that all such actions brought against the Commissioner be filed in the Superior Court of Fulton County. On December 17, 1998, the trial court, using principles of insurance contract construction to review the Plan of Conversion, ruled that Blue Cross was required to distribute Cerulean stock to each eligible subscriber and was not authorized to give eligible subscribers the option of declining or accepting the stock.

Cerulean then appealed directly to our Supreme Court. In its opinion, the Supreme Court summarily rejected the trial court's analysis on the merits of the controversy in its entirety, stating that the trial court: improperly construed the Plan of Conversion as it would an insurance contract for numerous reasons; failed to defer to the Commissioner's interpretation of the Plan of Conversion, which is controlling; failed to appreciate the Commissioner's autonomy regarding the conversion of corporations; failed to thoroughly consider the tax implications of the stock distribution; and inappropriately entertained arguments regarding the construction of the Plan of Conversion which directly contradicted the construction of the Commissioner. *Tiller*, supra at 68 (2). These rulings by the Supreme Court will be more fully discussed below. The Supreme Court ultimately reversed the trial court's ruling providing inter alia:

> The issue before this Court is whether Harrell Tiller and the other plaintiffs below were required to exhaust administrative remedies before seeking equitable relief in superior court. Because the plaintiffs are seeking an interpretation of the Plan of Conversion and because the Commissioner of Insurance reviewed the Plan, approved it, and participated in the conversion process after approval, we hold that the parties must follow the administrative review process before seeking judicial review. Therefore, the trial court erred in deciding the merits and we reverse.

Id. at 65.

Thereafter, Tiller chose to pursue one of the administrative remedies discussed by our Supreme Court and filed a petition with the Commissioner on May 17, 1999, requesting a declaratory ruling that he and the other petitioners were rightful holders of Cerulean stock. On June 22, 1999, the Commissioner denied Tiller's petition, finding that the offering of Cerulean shares was completed in 1996, the

plaintiffs should have raised this issue during the offering period, and, because the offering had already been completed, the plaintiffs' claims were moot. The Commissioner further opined that any forced offering to subscribers who initially rejected the shares would be inequitable two years after completion of the offering. The Plan contract between the Commissioner and Blue Cross had been completely executed at this point in time.

Unhappy with the Commissioner's decision, Tiller again appealed the Commissioner's decision to the Superior Court of Richmond County, ignoring the requirement of OCGA § 33-2-27 that such suits be filed in Fulton County. On September 21, 1999, the same trial court which had previously considered Tiller's case issued an order reversing the decision of the Commissioner. Again, using the same principles of contract construction analysis previously rejected by the Supreme Court in this matter with the same result, the trial court interpreted the Plan of Conversion to require Cerulean to issue stock to all eligible subscribers, whether or not they had indicated that they wanted the stock and irrespective of any adverse tax consequences. It is this decision which is now subject to our review.

1. A review of the record shows that the trial court's order fails to respect either the deferential standard of review for the Commissioner's decision or the ruling of our Supreme Court in its prior review of this case.

As an initial matter, the decision by the Commissioner may be reversed or modified, in relevant part, only:

> if substantial rights of [Tiller, Deal, Lokey, and the other class members] have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: . . . [c]learly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or . . . [a]rbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

OCGA § 50-13-19 (h). " 'The clearly erroneous standard of review to be applied by the superior court prevents a de novo determination of evidentiary questions leaving only a determination of whether the facts found by the [administrative agency] are supported by any evidence.' " *Commr. of Ins. v. Stryker*, 218 Ga. App. 716, 717 (1) (463 SE2d 163) (1995).

Furthermore, in applying this standard of review, we must be mindful of our Supreme Court's admonition regarding the autonomy of the Commissioner in marshaling matters such as this one.

OCGA § 33-20-34 requires the [C]ommissioner to determine

> whether the proposed conversion is "in the best interest of the company, its policyholders, and the general public" and authorizes the [C]ommissioner to promulgate any rules and regulations necessary for implementation. Thus, the legislature endowed the [C]ommissioner with broad review powers over any proposed conversion. *The [C]ommissioner's wide authority in this area can be respected only if courts decline the invitation to interpret various clauses and terms of an approved conversion plan.* Such interpretation is the province of the [C]ommissioner subject to judicial review as provided by statute.

(Emphasis supplied.) *Tiller*, supra at 67 (1).

Rather than follow this mandate, the trial court chose to interpret the clauses and terms of the Plan of Conversion, trumping the Commissioner's own interpretation that Blue Cross was required to offer, but not issue, shares to all eligible subscribers. In reaching its decision to overrule the Commissioner's interpretation of the very plan he approved, the trial court entertained vociferous arguments regarding syntax and word use in the Plan of Conversion and accompanying documents. Our Supreme Court, however, has already opined regarding the impropriety of doing so.

> [T]he parties argue extensively about the use and meaning of the words "offer" and "issue" in the Plan and hold diametrically opposed views regarding the manner in which Blue Cross was required to make the stock offer. The [C]ommissioner conducted a staff review of the Plan, held a public hearing at which his staff attorney questioned witnesses, and participated in the conversion process following the approval of the Plan. The length and depth of the agency involvement strongly suggest[ ] that the [C]ommissioner has an understanding of the disputed terms.

*Tiller*, supra at 67 (1). We agree. Rather than defer to the findings of the Commissioner, unless clearly erroneous or arbitrary, the trial court inappropriately reversed the Commissioner's decision and substituted its own interpretation of the Plan. For this reason alone, the trial court's order is erroneous.

In its prior ruling, the Supreme Court indicated that the trial court lacked the authority to interpret the Plan of Conversion as it would an insurance policy because: (1) such authority would mean that any company that makes regulatory filings could not rely upon the finality of agency approval until the six-year statute of limitation for contracts expired; (2) the Plan of Conversion expressly provides

that it will not affect the existing policies of eligible subscribers; (3) the Plan of Conversion is not an agreement between Blue Cross and its eligible subscribers and therefore has no similarity to a contract between an insurance company and its insured; and (4) once approved by the Commissioner, the Plan of Conversion became a contract between him and Blue Cross and was subject to enforcement between those two parties only. *Tiller*, supra at 68 (2). The trial court's order is also incorrect for any one of these reasons.

The trial court clearly rejected the Commissioner's and the Supreme Court's acceptance of the evidence of potential tax implications to involuntary shareholders had Cerulean been required to automatically issue stock to each of its eligible subscribers at the time of the Commissioner's initial decision on this issue. The Supreme Court further held that if the trial court's order were enforced,

> in any future conversion the [C]ommissioner's review power will be constricted because the precedent of the present case will require a company to effect a distribution without giving the policyholders the option of not receiving the shares. In that case a company will be unable to give policyholders the option of declining the shares even if the [C]ommissioner determines that because of potential tax consequences an option is in the policyholders' best interests. Such a usurpation of the [C]ommissioner's authority is contrary to the statutory scheme.

*Tiller*, supra at 68 (1).

Therefore, under the facts of this case, we do not find the conclusions of the Commissioner to be clearly erroneous. To the contrary, we find them to be well founded. Tiller and the other members of the class sought a declaratory ruling from the Commissioner regarding the propriety of the stock distribution, which they argued was an ongoing process. The Commissioner found that the stock distribution had been accomplished as of August 12, 1996, thereby mooting the subscribers' claims. In addition, the Commissioner reiterated that he had interpreted the Plan of Conversion to require that Blue Cross offer, not issue, shares of Cerulean to its eligible subscribers. The evidence of potential tax liability to involuntary shareholders supports the Commissioner's ruling. While the plaintiffs may perceive no potential tax implications at this time because of the merger, such potential clearly existed at the time of the initial offer.

Finally, relying heavily on the detailed analysis of our Supreme Court, as set forth above, the Commissioner concluded that Tiller and the others could not revisit the distribution process two years

after its completion. The Commissioner found that Deal and Lokey had raised the argument that they had not received any notice of the conversion for the first time in their petition for declaratory judgment. Pointing out that they had failed to raise this argument before the Supreme Court, the Commissioner rejected these claims, finding no support for them. These conclusions of the Commissioner are supported by the record, and we cannot say they are clearly erroneous.

If the ruling of the superior court was allowed to stand, the statutory scheme of OCGA § 33-20-34 would be defeated. That result is inapposite to the prior decision of our Supreme Court, the Georgia Code, and the decision of the Commissioner. Applying the previous holding of our Supreme Court in this matter requires the conclusion that the trial court erred in its ruling. The Commissioner appropriately ruled that Tiller, Deal, Lokey, and the other members of their class are not entitled to shares in Cerulean.

2. Blue Cross also contends that the trial court improperly denied its motion to intervene in the proceedings below. We agree.

The underlying declaratory judgment action was brought pursuant to OCGA § 50-13-11 of the Administrative Procedure Act, which provides:

> Each agency shall provide by rule for the filing and prompt disposition of petitions for declaratory rulings as to the applicability of any statutory provision or of any rule or order of the agency, provided that nothing herein shall limit or impair the right of an agency to seek the opinion of the Attorney General on any question of law connected with the duties of the agency pursuant to Code Section 45-15-3 or any other applicable statutory or constitutional provision. Rulings disposing of petitions have the same status as agency decisions or orders in contested cases.

In turn, OCGA § 50-13-14 sets out that, upon timely application in contested cases:

> (1) . . . any person shall be permitted to intervene when a statute confers an unconditional right to intervene or when the representation of an applicant's interest is or may be inadequate; or (2) . . . any person may be permitted to intervene when a statute confers a conditional right to intervene or when the applicant's claim or defense and the main action have a question of law or fact in common.

Under these standards, Blue Cross should have been allowed to intervene in the proceedings below. Tiller and the other class members were attacking the implementation of the Plan of Conversion,

which, after approval by the Commissioner, became a binding agreement between the Commissioner and Blue Cross. Certainly, Blue Cross had an overriding interest in this action, and, as such, its defenses against the class members shared questions of law and fact in common with the main proceedings. OCGA § 50-13-14 (2). Moreover, there is some question that the representation of Blue Cross's interests may have been inadequate in its absence. OCGA § 50-13-14 (1). Accordingly, the trial court erred in preventing Blue Cross's intervention in the proceedings below.

3. Finally, because the Superior Court of Richmond County lacked jurisdiction over the matter at hand, the trial court's order is null and void and must be vacated.

OCGA § 33-2-26 provides generally for appeals from actions of the Commissioner.

> An appeal from the Commissioner shall be taken only from an order on hearing or with respect to a matter as to which the Commissioner has refused or failed to grant or hold a hearing after demand therefor under Code Section 33-2-17 or as to a matter as to which the Commissioner has refused or failed to make his order on hearing as required by Code Section 33-2-23.

The orders encompassed by this provision include those issued on hearings the Commissioner is required to hold pursuant to Title 33 of the Georgia Code, including hearings to determine the propriety of plans of conversion set forth in OCGA § 33-20-34.

OCGA § 33-2-27 (a), in turn, sets forth the procedure by which a party can obtain judicial review of such an order. It states: "The form of proceeding for judicial review [of actions of the Commissioner] shall be by a petition in the Superior Court of Fulton County, a copy of which shall be served upon the Commissioner immediately." This provision explicitly vests the subject matter jurisdiction over the review of orders on hearings provided for in Title 33 of the Georgia Code in the Superior Court of Fulton County.

Although this jurisdictional defect was not raised below, subject matter jurisdiction cannot be waived.

> In *Dix v. Dix*, 132 Ga. App. 630 (64 SE 790) (1909) our Supreme Court stated with regard to OCGA § 15-1-2 that it is rudimentary law that parties [cannot], by consent express or implied, *give* jurisdiction to a court; that as to the subject-matter the court is limited by the powers conferred upon it by law, and [cannot] be *given* additional power or jurisdiction by consent of the parties or by waiver. . . . Since the

adoption of the code . . . an inability to *confer* jurisdiction over subject-matter upon a court, by consent or waiver, has been generally recognized and applied.

(Punctuation omitted.) *Apparel Resources Intl. v. Amersig Southeast*, 215 Ga. App. 483, 484 (1) (451 SE2d 113) (1994).

The Superior Court of Richmond County had no jurisdiction to hear this matter or to enter its order. Therefore, that order is hereby vacated.

*Judgment vacated. Eldridge, J., concurs. Barnes, J., concurs in Division 3 and in the judgment only as to Divisions 1 and 2.*

DECIDED JUNE 29, 2000 ▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

*Hull, Towill, Norman, Barrett & Salley, David E. Hudson, Long, Aldridge & Norman, Bruce P. Brown, Lawrence A. Slovensky, James A. Washburn, Carr, Tabb & Pope, W. Pitts Carr, David H. Pope*, for Blue Cross & Blue Shield of Georgia, Inc. et al.

*Thurbert E. Baker, Attorney General, Robert S. Bomar, Deputy Attorney General, Harold D. Melton, Senior Assistant Attorney General, William C. Calhoun, Sidney R. Barrett, Jr., Assistant Attorneys General*, for Oxendine.

*Sims, Moss, Kline & Davis, Jerry L. Sims, Brownstein & Nguyen, Jay D. Brownstein, Paine Little, Travers W. Paine III, Kevin S. Little, Bell & James, John C. Bell, Jr., Pamela S. James, James L. Bentley III*, for Deal and Tiller et al.