669 S.E.2d 233 (2008)
GEORGIA DEPARTMENT OF COMMUNITY HEALTH et al.
v.
FULTON-DeKALB HOSPITAL AUTHORITY et al.
No. A08A0948.
Court of Appeals of Georgia.
November 7, 2008.
Thurbert E. Baker, Atty. Gen., Shalen S. Nelson, Senior Asst. Atty. Gen., Michelle Townes, Asst. Atty. Gen., for Appellants.
Holland & Knight, Charles S. Johnson III, Sarah Catherine Leopold, Joshua I. Bosin, Atlanta, for Appellees.
PHIPPS, Judge.
We granted an application for discretionary appeal by the Georgia Department of Community Health (the DCH) from an order of the Superior Court of Fulton County reversing a decision rendered by the DCH in an administrative proceeding.
Two questions present themselves. The first is whether the petitioners for judicial reviewFulton-DeKalb Hospital Authority, d/b/a Grady Health System, and its division Hughes Spaulding Children's Hospital (referred to collectively as "Grady")can challenge the constitutionality of the DCH's retroactive application of a revision to its hospital services manual when in the administrative *234 proceeding Grady complained of the retroactive application of the manual but did not challenge it on constitutional grounds. The second is whether the DCH was indeed applying the manual retroactively.
For reasons that follow, we answer both questions in the affirmative and, therefore, affirm the order of the superior court invalidating the DCH's application of the manual.
"Pursuant to [OCGA § 50-13-19], courts review agency findings of fact to determine whether they are supported by any evidence. And in considering agency conclusions of law, courts conduct a de novo review."[1]
Grady renders outpatient medical services to participants in Georgia's Medicaid and Peachcare programs. The DCH is the state agency responsible for administering Georgia's Medicaid program.[2] The record here shows that DCH reimburses Georgia hospitals for outpatient services on an interim payment basis subject to later settlement. The DCH determines allowable and reimbursable charges through settlement calculations contained in the Hospital Statistical and Reimbursement Report (HS & R report).
In 2004, the DCH provided Grady with notices, in response to cost reports submitted by Grady to the DCH for fiscal years 1999 through 2002, that the DCH had overpaid Grady in the approximate amount of $2,076,700. Pursuant to requirements outlined in the DCH's Medicaid Provider Reimbursement Manual, Grady immediately paid that sum to the DCH. Grady then sought administrative review of the notices. In the administrative proceeding, Grady asserted a claim against the DCH to recover most of the money that the DCH had assessed against it. At the administrative hearing, the DCH sought to show that the DCH's overpayment claim was consistent with a revision to its "policies and procedures for hospital services" manual providing that effective with settlements completed on or after July 1, 2003, no other methodology will be used to determine allowable and reimbursable costs other than the HS & R report. The manual further states that the determination of allowable and reimbursable costs is made retrospectively based on cost reports submitted by the hospital. A statement of participation entered into between Hughes Spaulding and the Georgia Department of Medical Assistance (DMA) provides, however, that the participant shall be reimbursed for services rendered in accordance with terms and conditions of the policies and procedures manual "in effect on the date the service is rendered."
Although Grady and the DCH had entered into a settlement agreement in 2002 providing a methodology different than that contained in the HS & R report for determination of allowable Medicaid charges for Grady, the administrative law judge (ALJ) and the Commissioner of the DCH concluded that, even though Hughes Spaulding Children's Hospital is a division of Grady, the settlement agreement does not apply to the children's hospital because the children's hospital and Grady are separate and distinct Medicaid providers with their own Medicaid provider numbers.
At the hearing before the ALJ, Grady argued that it was error for the DCH to apply a July 2003 revision to its hospital services manual retroactively to its review of the children's hospital's cost reports for fiscal years 1999 through 2002. The ALJ rejected this argument and denied Grady's claim that the DCH had erred in its calculation of overpayments.
After the Commissioner affirmed the ALJ's decision, Grady filed a petition for judicial review in the Fulton County Superior Court. On judicial review, the superior court concluded that the DCH's use of the July 2003 manual revision in reviewing the children's hospital's cost reports for prior fiscal years constituted an unconstitutional retroactive application of it. Accordingly, the superior court reversed the DCH's decision and ordered it to remit payment to Grady in the amount of $1,826,333.
*235 1. In this appeal, the DCH charges the superior court with error in allowing Grady to advance arguments not urged in the administrative proceeding.
As authority, the DCH relies on our Supreme Court's decisions in Cerulean Cos. v. Tiller[3] and Dept. of Public Safety v. MacLafferty,[4] and this court's decision in Perkins v. Dept. of Med. Assistance.[5]
In Cerulean, the state insurance commissioner approved a plan for conversion of a health insurance company from a nonprofit company to a new for-profit company. Subscribers of the nonprofit company who had not been issued shares in the for-profit company later brought a lawsuit claiming that the conversion plan should have required the health insurance company to issue such shares to them. We held that those subscribers' failure to raise that issue before the state insurance commissioner and thereby exhaust their administrative remedies barred them from bringing suit. The longstanding Georgia rule, cited by Cerulean, requires that "a party aggrieved by a state agency's decision must raise all issues before that agency and exhaust available administrative remedies before seeking any judicial review of the agency's decision."[6] As pointed out by Cerulean, part of the rationale for requiring exhaustion of administrative remedies is that resort to the administrative process will permit the agency to apply its expertise to matters within the agency's jurisdiction.[7]
In Perkins, two companies that provided transportation services to certain indigent medical patients under contract with the Department of Medical Assistance (DMA) brought suit against the DMA over the method used by the DMA to calculate amounts owed for such transportation. One of the companies, Executive, had not previously sued the DMA or used the administrative appeal process. The other company, Royal Lion, had previously brought suit to adjudicate DMA's methodology and received an award of damages. DMA answered the new suit and moved for either summary judgment or dismissal. In reliance on Cerulean, we held that the trial court should have dismissed Executive's suit without prejudice due to its failure to exhaust administrative remedies.[8] We further held that the trial court properly granted summary judgment to Royal Lion because, as to it, the DMA had asserted a meritorious res judicata defense.[9]
In MacLafferty, after a hearing, an official of the Department of Public Safety (DPS) revoked MacLafferty's driver's license. Without having sought review of the officer's decision by the DPS, MacLafferty sought to overturn the revocation of her driver's license in superior court. The superior court affirmed the officer's decision. On appeal, the Court of Appeals reversed, holding that the hearing officer erred in making certain findings of fact. Our Supreme Court granted certiorari, however, and reversed the Court of Appeals decision. The Supreme Court cited provisions in the Administrative Procedure Act requiring a complainant to exhaust administrative remedies and prohibiting a court from considering any objection to an agency decision unless such objection was raised before the agency. The Court, therefore, held that MacLafferty had no standing to complain of the hearing officer's decision because she did not exhaust her administrative remedies by applying to the agency for review of the officer's decision and by not first complaining to the agency of the matters sought to be litigated in court. The Court pointed out that a review by the agency would have afforded the agency the opportunity to address MacLafferty's complaints with its own personnel and without burdening the courts.
In response to the DMA's contention, Grady argues that although a party must raise all issues before an administrative agency, de *236 novo appellate review of legal questions is not confined to the legal authority relied on below. In support of this argument, Grady cites the decision of the United States Supreme Court in United States Nat. Bank of Oregon v. Independent Ins. Agents of America,[10] as well as the decisions of the United States Court of Appeals for the District of Columbia Circuit in United States v. Rapone[11] and Albrecht v. Committee on Employee Benefits, etc.[12]
In the Bank of Oregon case, the Comptroller of the Currency approved a request by a national bank with its principal place of business in Oregon to sell insurance through a branch in Oregon to customers nationwide. The Comptroller approved the request under 12 U.S.C. § 92. Various trade organizations representing insurance agents challenged the Comptroller's decision in the United States District Court of the District of Columbia and in the Court of Appeals for the District of Columbia Circuit, claiming that the decision was inconsistent with § 92. On its own motion, the Court of Appeals held that § 92 was no longer valid. The United States Supreme Court granted certiorari to address the question of whether § 92 remained in force and whether the Court of Appeals had properly addressed the issue. The Supreme Court answered the latter question in the affirmative, holding that "when an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law."[13] Concluding, however, that § 92 remained in force, the Supreme Court reversed the decision of the Court of Appeals.
In the Rapone case, Rapone and others were on trial for criminal contempt. Rapone argued before the federal district court that he had a constitutional right to a jury trial. Although that argument was without merit, Rapone actually had a right to jury trial under an obscure statute he failed to cite to the district court. The question on appeal was whether he had surrendered his statutory right to a jury trial by not bringing the statute to the district court's attention during repeated requests for a jury trial. The federal appellate court determined that he had not. The court reasoned,
This case is distinguishable from cases in which a litigant attempts to raise an entirely new claim or new issue on appeal. In such cases, issues and legal theories not asserted at the District Court level ordinarily will not be heard on appeal.... In the present case, Rapone is not attempting to raise the issue of a jury trial for the first time on appeal. Rather, he simply offers new legal authority for the position that he repeatedly advanced before the district courtthat he was entitled to have his case tried before a jury.[14]
In Albrecht, a class of employees of the Federal Reserve System sued the Board of Governors of the Federal Reserve System seeking recovery of mandatory contributions they had made to an employee retirement plan after discovering that the plan was over-funded. In dismissing certain of the employees' claims, the federal district court determined that the Board enjoyed sovereign immunity. The employees then argued for the first time on appeal that they had sued the Board of Governors members in their capacities as individuals vested with authority over the retirement plan rather than in their government capacities as members of the Board of Governors. Distinguishing Rapone, the federal appellate court in Albrecht concluded that the Federal Reserve employees were attempting to raise an entirely new argument on appeal rather than merely presenting new legal authority for an argument raised below.[15] The appellate court thus held that the argument had been waived.
*237 In this case, as in Bank of Oregon, the claim before the court (i.e., that an administrative rule was being applied retroactively and thus illegally) was also raised in the administrative proceeding. Grady challenged the DCH's retroactive application on nonconstitutional grounds in the administrative proceeding and on constitutional grounds in court, thereby changing the legal theory being advanced. This case is thus controlled favorably to Grady by the reasoning in Bank of Oregon and Rapone. Cerulean, Perkins, MacLafferty, and Albrecht are thus distinguishable. Unlike the situation in MacLafferty, Grady challenged retroactive application of the manual in the administrative proceeding on grounds within the expertise of the administrative agency and then challenged retroactive application of it on constitutional grounds within the jurisdiction of the court. Consequently, Grady did not fail to exhaust administrative remedies or waive the constitutional challenge by failing to raise it in the administrative proceeding.
2. The DCH also challenges the court's determination that it was applying the manual in an unconstitutionally retroactive way. We disagree.
It is true that, by its terms, the 2003 revision to the hospital services manual does not purport to enact any new methodology to determine allowable and reimbursable outpatient service costs, that it simply provides that no other methodology will be used other than the HS & R report, and that the DCH has been applying that methodology with respect to Grady and other Georgia hospitals since 1983. But at the hearing before the ALJ, a DCH representative acknowledged that its overpayment claim was based on the revision to the manual prohibiting it from using any methodology to determine allowable and reimbursable costs other than the HS & R cost report effective with settlements completed on or after July 1, 2003. Yet it is undisputed that the statement of participation required Grady to be reimbursed for services in accordance with terms and conditions of the manual in effect on the date services were rendered. Contrary to argument advanced by the DCH, the statement of participation was in the record of the administrative proceeding.[16] Therefore, the superior court was authorized to find that the DCH's refusal to apply methodologies other than the HS & R report constituted a legally unauthorized retroactive application of the 2003 revision to the manual.
Judgment affirmed.
BARNES, C.J., and JOHNSON, P.J., concur.
NOTES
[1] Infinite Energy v. Ga. Public Svc. Comm., 257 Ga.App. 757, 758(1), 572 S.E.2d 91 (2002)(footnotes omitted).
[2] See OCGA § 49-4-140 et seq.
[3] 271 Ga. 65, 516 S.E.2d 522 (1999).
[4] 230 Ga. 22, 195 S.E.2d 748 (1973).
[5] 252 Ga.App. 35, 555 S.E.2d 500 (2001).
[6] 271 Ga. at 66(1), 516 S.E.2d 522 (footnote omitted).
[7] Id. at 67, 516 S.E.2d 522.
[8] 252 Ga.App. at 36-37(1), 555 S.E.2d 500.
[9] Id. at 36, 38(2), 555 S.E.2d 500.
[10] 508 U.S. 439, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993).
[11] 131 F.3d 188 (U.S.App.D.C.1997).
[12] 357 F.3d 62 (U.S.App.D.C.2004).
[13] 508 U.S. at 446 (II), 113 S.Ct. 2173 (citation and punctuation omitted).
[14] 131 F.3d at 196 (III) (citation and punctuation omitted).
[15] 357 F.3d at 66.
[16] See generally Howell v. Harden, 231 Ga. 594(1), 203 S.E.2d 206 (1974), citing OCGA § 50-13-19(g) (judicial review of administrative agency decision by superior court confined to record made before agency).