A08A1789. NORTHEAST GEORGIA CANCER CARE, LLC v. BLUE CROSS & BLUE SHIELD OF GEORGIA, INC. et al.

(676 SE2d 428)

BERNES, Judge.

Northeast Georgia Cancer Care, LLC filed the instant lawsuit against Blue Cross & Blue Shield of Georgia, Inc. and Blue Cross and

Blue Shield Healthcare Plan of Georgia, Inc. (collectively "Blue Cross"), seeking a declaratory judgment and alleging claims of breach of legal duty, tortious interference with business relations, and unfair trade practices. Pursuant to these claims, Northeast challenges Blue Cross's refusal to allow Northeast and its medical oncologists to participate as an approved health care provider for Blue Cross's HMO network. Blue Cross filed a motion to dismiss Northeast's claims, which the trial court granted. For the reasons set forth below, we affirm.

> OCGA § 9-11-12 (b) (6) provides that an action can be dismissed upon the merits where the complaint fails to state a claim upon which relief can be granted. Dismissal is appropriate only where a complaint shows with certainty that the plaintiff would not be entitled to relief under any state of facts that could be proven in support of his claim. . . . [W]e review the dismissal de novo, construing the complaint's allegations and all possible inferences therefrom in favor of the plaintiff.

(Citations and punctuation omitted.) *Walker County v. Tri-State Crematory*, 284 Ga. App. 34, 35 (643 SE2d 324) (2007).

So viewed, Northeast's complaint, as amended, alleges that Northeast is a group of cancer and blood disorder treatment specialists whose practice consists of medical and radiation oncologists. Their main office is located in Athens; however, they have satellite offices throughout the state. From 2002 to 2007, Northeast participated as an approved health care provider in Blue Cross's health maintenance organization ("HMO") and preferred provider organization ("PPO") networks. In 2003, a dispute over payments and reimbursements arose between the parties. According to Northeast, Blue Cross breached the reimbursement provisions of their provider contracts. As a result of the dispute, Northeast terminated its provider contracts with Blue Cross, effective April 30, 2007.

Eventually, the parties settled the payment and reimbursement dispute. Thereafter, Northeast attempted to negotiate new provider contracts with Blue Cross. Although Northeast previously had been the only Blue Cross cancer care provider in the Athens area, another entity, Georgia Cancer Specialists ("GCS"), opened an office in Athens in May 2007. Blue Cross entered into an exclusive one-year contract with GCS to provide medical oncology services to its HMO members in the Athens area from July 1, 2007 until July 1, 2008. As a result of the exclusive contract with GCS, Blue Cross informed Northeast that the HMO network was closed and excluded Northeast and its medical oncologists from participating in the HMO network.

Blue Cross later extended contracts allowing Northeast's individual radiation oncologists to participate as providers in the HMO, PPO, and PAR networks, and allowing the medical oncologists to participate as providers in the PPO and PAR networks. Northeast as an entity, however, continued to be excluded from Blue Cross's insurance plans.

Northeast filed suit against Blue Cross, seeking a declaratory judgment as to its right to participate as an HMO provider under Georgia's Any Willing Provider statute (the "AWP statute"). Northeast also alleged claims of breach of a legal duty for failure to comply with the AWP statute, tortious interference with business relations, and violations of Georgia's Uniform Deceptive Trade Practices Act ("UDTPA").[1] Blue Cross moved for dismissal of these claims, and the trial court granted the motion. This appeal followed.

1. In its declaratory judgment claim, Northeast sought a statutory construction of the AWP statute, OCGA § 33-20-16.[2] According to Northeast, the AWP statute mandates that Northeast and its medical oncologists be allowed to participate as providers in the Blue Cross HMO network under the same terms and conditions offered to other participating physicians. Blue Cross argues, however, that Northeast's claim is procedurally and substantively barred since Northeast failed to exhaust its administrative remedies before the Insurance Commissioner and since the AWP statute does not apply to HMOs. We agree that Northeast's claim was procedurally barred by the failure to exhaust administrative remedies. Thus, dismissal of the claim was proper.[3]

OCGA § 33-20-30 sets forth the procedure for resolving disputes arising from the alleged violation of statutes regulating insurance health care plans under the Health Care Plan Act, OCGA § 33-20-1 et seq.:

---

[1] Northeast's amended complaint also set forth claims for breach of contract and litigation expenses, but these claims were not addressed in the motion and dismissal order.

[2] OCGA § 33-20-16 provides that

[e]very doctor of medicine, every doctor of dental surgery, every podiatrist, and every health care provider within a class approved by the health care corporation who is appropriately licensed to practice and who is reputable and in good standing shall have the right to become a participating physician or approved health care provider for medical or surgical care, or both, as the case may be, under such terms or conditions as are imposed on other participating physicians or approved health care providers within such approved class under similar circumstances in accordance with this chapter.

[3] The trial court did not grant the motion to dismiss based upon the procedural defect, but rather ruled upon Northeast's claims substantively. While we disagree with the trial court's procedural ruling, we agree that the claim was required to be dismissed. "The dismissal of a complaint will be affirmed if right for any reason." *Walker County v. Tri-State Crematory*, 292 Ga. App. 411, 412 (664 SE2d 788) (2008).

Any dispute arising within the purview of this chapter with reference to the regulation and supervision of any health care corporation shall within 30 days after such dispute arises be submitted by the aggrieved person to the Commissioner for his decision with reference thereto, provided nothing in this Code section shall authorize or require the Commissioner to determine the contractual rights between the parties interested in any such corporations. After proper notice and hearing, any decisions and order of the Commissioner made pursuant to this chapter shall be binding on the persons involved unless set aside on review as provided by this Code section.

OCGA § 33-20-30 applies to disputes concerning the regulation and supervision of HMOs pursuant to OCGA § 33-21-28 (a).[4] And, significantly, the Insurance Rules and Regulations provide a procedure in which an interested person may obtain a declaratory ruling by the Commissioner as to the applicability of any statutory provision. See Ga. Comp. R. & Regs. r. 120-2-2-.05 (2).[5] Accordingly, Northeast was first required to submit its dispute to the Insurance Commissioner for a hearing and resolution in accordance with this mandated statutory and regulatory scheme.

Northeast emphasizes that OCGA § 33-20-30 does not authorize or require the Commissioner to determine the contractual rights between the parties, and argues that this exception to the administrative remedy requirement applies here. We disagree and conclude that Northeast's reliance upon the exception is misplaced. This case cannot be deemed a dispute requiring a determination of the parties' contractual rights because, in fact, no contract existed between the parties. Indeed, Northeast's complaint centers around the fact that Blue Cross has *refused to enter into a contract* that would allow it to participate as a health care provider in Blue Cross's HMO, PPO, and PAR networks. Simply, this case seeks a determination as to whether the AWP statute applies to HMO insurance networks under the regulatory scheme set forth in Title 33 and the Health Care Plan Act. As such, the exception to the administrative remedy requirement does not apply, and Northeast was required to exhaust its adminis-

---

[4] OCGA § 33-21-28 (a) provides in relevant part: "Except as otherwise provided by law, all provisions of [Title 33, Insurance,] which are not in conflict with [Chapter 21, Health Maintenance Organizations,] shall apply to health maintenance organizations and all other persons subject to [Chapter 21]."

[5] Furthermore, OCGA §§ 33-2-16 through 33-2-24 discuss the conduct of administrative hearings before the Commissioner. OCGA §§ 33-2-26 through 33-2-28 discuss judicial review of the Commissioner's decisions.

trative remedies as provided in OCGA § 33-20-30.[6]

Nor do we find merit in Northeast's contention that Blue Cross waived the exhaustion issue by failing to assert it as a defense in the answer to the complaint. The failure to exhaust administrative remedies is not designated as an affirmative defense or a defense that is waived if not presented in the answer to the complaint. See OCGA §§ 9-11-8 (c), 9-11-12 (h) (1). And, pretermitting whether a party's failure to pursue administrative remedies pertains to subject matter jurisdiction that cannot be waived,[7] the record reflects that Blue Cross timely raised the issue in the court below, obtained a ruling from the trial court on the issue, and has further argued the issue in this appeal. It follows that no waiver occurred in this case.

As explained in *Cerulean Cos. v. Tiller*, 271 Ga. 65, 66-68 (1) (516 SE2d 522) (1999), the rationale for requiring exhaustion of administrative remedies is to permit the agency to apply its expertise, preserve the agency's autonomy, allow for a more efficient resolution, and provide for the uniform application of matters within the agency's jurisdiction. In keeping with this purpose, a party is required to pursue available administrative remedies before seeking relief in the superior court. Id. Because Northeast failed to do so as required by OCGA § 33-20-30, its declaratory judgment claim must fail. Id. See also *Chatham County Bd. of Assessors v. Jepson*, 261 Ga. App. 771, 771-772 (1) (584 SE2d 22) (2003).

2. Northeast also alleged that Blue Cross was liable in tort under OCGA § 51-1-6 based upon its breach of a legal duty to comply with the AWP statute. Again, Northeast's claim was properly dismissed.

Northeast's claim in this regard essentially raises the same allegations and question regarding the AWP statute as those presented in Division 1 above. And, as previously stated, Northeast was required to exhaust its administrative remedies before the Insurance Commissioner to pursue these claims. Northeast cannot do indirectly that which it is prohibited from doing directly, and thus, cannot bypass the mandatory administrative procedures by attempting to present its claim under the guise of a tort action seeking the

---

[6] The recent decision in *City of Atlanta v. Hotels.com*, 285 Ga. 231 (674 SE2d 898) (2009) does not change this result. That case held that an agency does not have to exhaust administrative remedies before seeking legal resolution of the threshold issue of whether the agency has jurisdiction or authority to act. Id. Here, however, there is clear statutory authority giving the commissioner jurisdiction over the question at issue.

[7] See OCGA § 9-11-12 (h) (3); *Rockdale County v. Finishline Indus.*, 238 Ga. App. 467, 469-470 (2) (518 SE2d 720) (1999) (rejecting argument that failure to raise the issue of exhaustion in the court below waived the issue on appeal "because subject matter jurisdiction of a court is not a matter which can be waived"). But see *Ga. Bd. of Dentistry v. Brooks*, 273 Ga. 852, 853 (1) (548 SE2d 284) (2001) (holding that the exhaustion issue had been waived for purposes of appellate review because it had not been raised as an enumeration of error or in the appellate brief).

recovery of damages. See *Perkins v. Dept. of Med. Assistance*, 252 Ga. App. 35, 37 (1) (555 SE2d 500) (2001). Because Northeast's dispute must be resolved in accordance with the administrative procedures of the Insurance Code provisions and Northeast failed to exhaust its administrative remedies as required, dismissal of its claim was proper.

3. Northeast further alleged that Blue Cross tortiously interfered with the business relations between Northeast and its patients and referral physicians by excluding it from the Blue Cross insurance network plans.

> The elements of tortious interference with contractual relations, business relations, or potential business relations are: (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of contractual obligations or caused a party or third parties to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.

(Citation omitted.) *Dalton Diversified v. AmSouth Bank*, 270 Ga. App. 203, 208-209 (4) (a) (605 SE2d 892) (2004). Liability for tortious interference with a contract requires that a defendant be both a stranger to the contract and the business relationship giving rise to and underpinning the contract. "Thus, all parties to an interwoven contractual arrangement are not liable for tortious interference with any of the contracts or business relationships." (Citations and punctuation omitted.) *Pruitt Corp. v. Strahley*, 270 Ga. 430 (510 SE2d 821) (1999). See also *LaSonde v. Chase Mtg. Co.*, 259 Ga. App. 772, 773-774 (1) (577 SE2d 822) (2003).

Here, Blue Cross was not a stranger to the business relationship between Northeast and the patients and referral physicians in the Blue Cross network. Northeast complains that it was excluded from Blue Cross's health care insurance network, which resulted in its inability to receive payment from Blue Cross for treatment services rendered to patient members in the network. The patients are members of the Blue Cross network; Blue Cross organizes and operates the network; Blue Cross issues payment to physicians for the covered health care services rendered to its patient members under the network plan; and significantly, Blue Cross is responsible for deciding whether a provider is approved or qualified to participate in its network. It is thus clear that Blue Cross is an integral part of the business relationships alleged in Northeast's tortious inter-

ference claim. Consequently, Northeast's tortious interference claim was properly dismissed. See *Pruitt Corp.*, 270 Ga. at 430-431; *Dalton Diversified*, 270 Ga. App. at 208-210 (4); *LaSonde*, 259 Ga. App. at 773-774 (1).

4. Finally, Northeast alleged that Blue Cross violated Georgia's UDTPA, OCGA § 10-1-370 et seq., by refusing to allow Northeast and its medical oncologists to participate in the HMO network, by making false statements regarding the reason for Northeast's lack of participation in the HMO network, and by making misleading statements regarding the availability of insurance coverage for services rendered by Northeast's oncologists. Northeast's claims in this regard were properly dismissed because they are exempt from the UDTPA.

OCGA § 10-1-374 sets forth certain exemptions from the UDTPA. Subsection (a) (1) of the exemptions statute provides that the UDTPA does not apply to "[c]onduct in compliance with the orders or rules of or a statute administered by a federal, state, or local government agency."

In *Ferguson v. United Ins. Co. &c.*, 163 Ga. App. 282, 283 (2) (293 SE2d 736) (1982), this Court interpreted and applied a similar exemption provision found in Georgia's Fair Business Practices Act ("FBPA"). OCGA § 10-1-396 (1) of the FBPA provides that "[n]othing in this part shall apply to . . . [a]ctions or transactions specifically authorized under laws administered by or rules and regulations promulgated by any regulatory agency of this state or the United States." Based upon this statutory language, we concluded that "insurance transactions are among those types of transactions which are exempt from the [FBPA]," since such transactions are subject to an extensive regulatory regime administered by the Insurance Department of the State of Georgia and the Office of Insurance Commissioner pursuant to Title 33 of the Georgia Code. *Ferguson*, 163 Ga. App. at 283 (2). See also *Chancellor v. Gateway Lincoln-Mercury*, 233 Ga. App. 38, 45 (2) (502 SE2d 799) (1998) ("The General Assembly intended that the Georgia FBPA have a restricted application only to the unregulated consumer marketplace and that FBPA not apply in regulated areas of activity, because regulatory agencies provide protection or the ability to protect against the known evils in the area of the agency's expertise.").

Because the exemption provision in the UDTPA is similar to the exemption provision in the FBPA, the analysis and reasoning set forth in *Ferguson* may also be applied in the present case. As such, we construe OCGA § 10-1-374 (a) (1) of the UDTPA to mean that insurance transactions are among those types of transactions which are exempt from the UDTPA. Indeed, the Insurance Code contains its own statutory scheme that regulates unfair trade practices within

the insurance industry and gives the Insurance Commissioner the power to investigate and act upon such claims against an insurer. See OCGA §§ 33-6-4 through 33-6-9; Ga. Comp. R. & Regs. rr. 120-2-2-.07; 120-2-2-.23 (6). Based upon these provisions and the reasoning of *Ferguson*, we conclude that claims of unfair trade practices in insurance transactions are governed by the Insurance Code, not Georgia's UDTPA. See *Colonial Life &c. Ins. Co. v. American Family Life &c. of Columbus*, 846 FSupp. 454, 462 (V) (D. S.C. 1994). See, e.g., *Ferguson*, 163 Ga. App. at 283 (2). Northeast's UDTPA claims, therefore, were properly dismissed.

*Judgment affirmed. Andrews, P. J., and Doyle, J., concur.*

DECIDED MARCH 26, 2009 

*Blasingame, Burch, Garrard & Ashley, E. Davison Burch, King & Spalding, James W. Boswell III*, for appellant.

*McKenna, Long & Aldridge, Bruce P. Brown, James A. Washburn, Jeffrey R. Baxter, Cook, Noell, Tolley & Bates, J. Vincent Cook*, for appellees.

*Donald J. Palmisano, Brian W. Looby*, amici curiae.