**THIRD DIVISION**
**BARNES, P. J.,**
**MILLER and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**November 12, 2014**

# In the Court of Appeals of Georgia

A14A1369. RIGBY et al. v. BOATRIGHT et al.

MILLER, Judge.

The Satilla Rural Electric Membership Corporation ("Satilla") disqualified Jerry E. Boatright from running for the Board of Directors ("the Board") seat representing Bacon County. Thereafter, both in his individual capacity and derivatively on behalf of Satilla's members, Boatright sued Satilla and the individual Board members, as well as members of the Board's Credentials and Elections Committee for injunctive and declaratory relief and for a writ of mandamus to place his name on the ballot for the Board election. The parties stipulated to certain facts and, after a hearing, the trial court granted Boatright a writ of mandamus, finding that the decision to disqualify him was arbitrary and capricious. Five members of the Board, Julian Rigby, Thomas J. Morris, Herman Sellers, Scott Day, and Fred C.

Harrison, Sr. (collectively "Appellants") appealed,[1] and the Georgia Supreme Court reversed, holding that mandamus relief was not available to enforce the purely private right that Boatright asserted. *Rigby v. Boatright*, 294 Ga. 253, 254-256 (751 SE2d 851) (2013). Accordingly, the Georgia Supreme Court remanded the case to the trial court for consideration of Boatright's requests for injunctive relief. Id. at 256.

On remand, the trial court reiterated that the decision to disqualify Boatright was arbitrary and capricious, granted Boatright's requests for declaratory and injunctive relief, enjoined the Board from declaring Boatright disqualified and again ordered the Board to place Boatright on the ballot. Appellants appeal again to this Court,[2] contending that (1) the trial court erred in finding that the decision to disqualify Boatright was arbitrary and capricious and (2) the trial court erred in granting Boatright injunctive relief. For the reasons that follow, we affirm.

> [A] trial court has broad discretion to fashion equitable remedies based upon the exigencies of each case, and we have held that a trial court should craft an injunction in a manner that is the least oppressive

---

[1] The remaining members of the Board, as well as the members of the Credentials and Elections Committee and Satilla itself, did not appeal the trial court's decision.

[2] Appellants initially filed this appeal in the Georgia Supreme Court, which transferred the case to this Court.

> to the defendant while still protecting the valuable rights of the plaintiff. Moreover, where there are conflicts in the evidence and a trial court, in reviewing those conflicts, grants an injunction, an appellate court will not disturb the injunction the trial court has fashioned unless there was a manifest abuse of discretion.

(Footnotes omitted.) *Goode v. Mountain Lake Investments, LLC*, 271 Ga. 722, 724 (2) (524 SE2d 229) (1999). Moreover, in an action for declaratory and injunctive relief, the trial court's findings of fact shall not be set aside unless clearly erroneous. See *State Farm Mut. Auto. Ins. Co. v. Mabry*, 274 Ga. 498, 503 (4) (556 SE2d 114) (2001).

Satilla is a nonprofit public service electric cooperative serving members in South Georgia, including Bacon County, where Boatright and Rigby reside. The Board is made up of Satilla's members and each Board member represents a separate district served by Satilla. Satilla's Bylaws, Art. III, § 5.03; Art. IV, §§ 1-2. Candidates for Board membership are nominated by a committee made up of Satilla members who are appointed by the Board. Satilla's Bylaws, Art. IV, § 3. Additional candidates may also be nominated by collecting the signatures of 150 Satilla members who live in the district that the candidate seeks to represent. Id. Petitions for nomination must be submitted at least 90 days prior to the election. Satilla's Bylaws, Art. IV, § 3. The

3

Board also appoints a Credentials and Elections Committee ("the Elections Committee"), made up of Satilla members who are not currently Board members or members of the nominating committee. Satilla's Bylaws, Art. IV, § 8.

Under Satilla's bylaws, "no person shall be eligible to become or remain a Board Member of Satilla unless . . . he/she is in no way employed by or financially interested in a competing enterprise, a business selling electric energy, or a business from which Satilla is presently contracting with for services or supplies." Satilla's Bylaws, Art. IV, § 2. See *Rigby*, supra, 294 Ga. at 253. Board members must also be members of Satilla; have their principle residence in the district they seek to represent; and be age 18 or older. Satilla's Bylaws, Art. IV, § 2. There are no other requirements for Board membership.

On May 29, 2012, Boatright, who is a member of Satilla, timely submitted a petition to the Elections Committee nominating him as an additional candidate for the October 2, 2012 election to the Board for the seat representing Bacon County. *Rigby*, supra, 294 Ga. at 253. Rigby held the Bacon County seat and was running for re-election.

On June 13, 2012, Rigby objected to Boatright's qualifications to be a member of the Board, based upon Boatright's financial interest in Pike Electric, LLC

4

("Pike").[3] See *Rigby*, supra, 294 Ga. at 253. "Pike is, and has been for some years, a contractor of Satilla. . . In 2010, Boatright retired from long-term employment with Pike and, as of May 29, 2012, held Pike stock and a 401(k) account through Pike." *Rigby*, supra, 294 Ga. at 253.

According to Satilla's bylaws, Art. IV, § 8, it is the responsibility of the Elections Committee to:

> establish or approve . . . any ballot or other voting, . . . to rule upon all other questions that may arise relating to . . . the election of directors (including but not limited to the validity of petitions of nominations or the qualifications of candidates and the regularity of the nominations and elections of directors), and to pass upon any protest or objection with respect to any election . . . . The [Elections] Committee's decision (as reflected by a majority of those actually present and voting) on all matters covered by this Section shall be final.

Before the Elections Committee met with regard to Boatright's petition, Satilla's attorney gave the Elections Committee a written opinion concluding that Boatright's

---

[3] Rigby, whose nephew was a longtime Satilla employee, also objected to Boatright's qualification on the ground that Boatright's son was a manager at Satilla and had worked there for more than 20 years. Satilla's nepotism policy prohibits the *hiring* of relatives (including children, nieces and nephews) of current employees and Board members. On appeal, however, Appellants have abandoned the claim that Boatright was disqualified under the nepotism policy.

5

independently-held retirement plan and ownership of Pike stock did not create a financial conflict of interest disqualifying Boatright from serving on the Board. Additionally, Boatright sold his Pike stock and converted his Pike retirement account before the meeting. See *Rigby*, supra, 294 Ga. at 253. Nevertheless, citing the financial interest provision of the bylaws, the Elections Committee formally ruled on June 21, 2012, that Boatright was not qualified to serve on the Board. *Rigby*, supra, 294 Ga. at 253.

Thereafter, on June 28, 2012, Boatright filed what the parties stipulate was a second petition for nomination as a candidate. See *Rigby*, supra, 294 Ga. at 253. By a vote of 4-3, the Elections Committee declined to meet to address Boatright's second petition and considered its earlier decision regarding Boatright's prior petition to be final. See id. Boatright then brought this action.

1. Appellants contend that the trial court erred in granting relief to Boatright because the Elections Committee's decision to disqualify Boatright was made in good faith and with honest judgment. We disagree.

"Satilla's bylaws are construed according to principles of contract law." *Rigby*, supra, 294 Ga. at 256. Where, as here, it is undisputed that the Elections Committee

had discretion to determine whether Boatright was qualified for candidacy,[4] the "sole question" for the trial court in reviewing the Elections Committee's decision is whether the decision was made in good faith and involved the exercise of honest judgment. See *Planning Technologies, Inc. v. Korman*, 290 Ga. App. 715, 718 (660 SE2d 39) (2008).

"The requirement that a party exercise good faith and honest judgment, even where the contractual language grants the party discretion, arises from the implied duty of good faith and fair dealing imposed upon virtually every contract under Georgia law." (Citation omitted.) *Capital Health Mgmt. Group, Inc. v. Hartley*, 301 Ga. App. 812, 817 (1) (689 SE2d 107) (2009). "The concept of good faith encompasses basic notions of fairness and commercial reasonableness." (Citation and punctuation omitted.) Id. Even where a Board's decision is final, the Board's discretion is not absolute and the Board's decisions are still subject to the standards of good faith and honest judgment. See *Planning Technologies*, supra, 290 Ga. App. at 719.

A decision that is made for arbitrary or capricious reasons, is based on an improper pecuniary motive, or is predicated on dishonesty or illegality is not made

---

[4] Satilla Bylaws, Art. IV, § 8.

in good faith. See *Planning Technologies*, supra, 290 Ga. App. at 720. Furthermore, "a decision can be so grossly erroneous, as where there is a total absence of any factual evidence to support it, that it creates an inference of bad faith and dishonest judgment." Id. Whether a party exercises good faith and honest judgment in the performance of a contract is a question of fact for the trial court. See *Capital Health Mgmt.,* supra, 301 Ga. App. at 817-818 (1); see also *Hunting Aircraft, Inc. v. Peachtree City Airport Auth.*, 281 Ga. App. 450, 452 (1) (636 SE2d 139) (2006).

Under these standards, by finding that the Elections Committee's decision was arbitrary and capricious, the trial court necessarily found that the Elections Committee's decision was not made in good faith. *Planning Technologies*, supra, 290 Ga. App. at 720. As set forth above, we review the trial court's factual findings under the clearly erroneous test, and we will not disturb the trial court's findings of fact if there is any evidence to sustain them. See *Patel v. Patel*, 285 Ga. 391, 392 (1) (a) (677 SE2d 114) (2009).

Appellants argue that the Elections Committee acted reasonably by using the date of Boatright's initial application to determine whether he was disqualified due to a financial conflict of interest and by refusing to consider Boatright's second petition, since the bylaws provide that the decisions of the Elections Committee are

final. Satilla's Bylaws, Art. IV, § 8. Regardless of the Elections Committee's discretion to decide which date to use, their decision to disqualify Boatright could not be arbitrary and capricious. See *Planning Technologies*, supra, 290 Ga. App. at 719-720.

Contrary to Appellant's argument, some evidence supports the trial court's finding that the Elections Committee's decision was arbitrary and capricious. First, at the time of the Elections Committee's vote, it is undisputed that Boatright no longer held any stock in Pike or any financial interest in Pike's retirement plan and thus was a qualified candidate. Second, even before Boatright sold his Pike stock and converted his retirement account, the Board's own attorney recommended that Boatright be deemed qualified on the ground that stock ownership and a retirement account do not pose a significant financial conflict of interest. *Rigby*, supra, 294 Ga. at 253. Third, Boatright was subjected to disparate treatment in that Rigby's qualifications to serve on the Board were never challenged despite the fact that he owned an interest in a business that sold propane to Satilla during some part of his 15 years as a Board member. Finally, the Elections Committee refused to consider Boatright's second petition, even though that petition was timely filed more than 90 days before the election, and, as of the date of the second application, Boatright had

9

undisputably divested himself of any financial interest in Pike and was a qualified candidate. On this record, the trial court's factual finding that the decision to disqualify Boatright was arbitrary and capricious is supported by some evidence and must be upheld. See *Patel*, supra, 285 Ga. at 392 (1) (a).

2. Appellants contend that the trial court's order that the Board place Boatright on the ballot is improper mandamus relief by another name. We discern no error.

After holding that Boatright was not entitled to a writ of mandamus, the Supreme Court noted that "this does not mean that Boatright is left without a remedy. Rather, the right he seeks to enforce may be addressed by a court of equity." *Rigby*, supra, 294 Ga. at 256. On remand, the trial court prohibited the Board from declaring Boatright disqualified and ordered the Board to place Boatright on the ballot. Rather than challenging the validity of the prohibitive injunction, Appellants argue that the trial court's order requiring the Board to place Boatright on the ballot is improper mandamus relief. In transferring the instant case to this Court, the Georgia Supreme Court concluded that the "trial court's grant of permanent injunctive relieve was ancillary to its legal determination" that Boatright was qualified to serve as a candidate and that no request for mandamus relief remained following its opinion in *Rigby*, supra.

As set forth above, trial courts have broad discretion to fashion equitable remedies, and an appellate court will not disturb a trial court's injunction absent a manifest abuse of discretion. See *Goode*, supra, 271 Ga. at 724 (2).

Appellants contend that the only affirmative relief requested by Boatright was a writ of mandamus and make much of the fact that the trial court's orders before and after remand contained identical language ordering the Board to place Boatright on the ballot. In his complaint, Boatright requested a writ of mandamus requiring the Elections Committee to place his name on the ballot. Boatright also requested injunctive relief prohibiting the Elections Committee from holding an election until it issued a ballot with Boatright's name on it. In its initial order, issued on November 5, 2012, the trial court granted "Plaintiff's prayers for declaratory judgment and a Writ of Mandamus" and ordered the Board to issue a ballot including Boatright as a candidate for the Board seat representing Bacon County. In the December 3, 2013 order issued on remand, the trial court granted "Plaintiff's prayers for Declaratory Judgment and Permanent Injunction," enjoined the Board from declaring Boatright disqualified and again ordered the Board to place Boatright on the ballot.

11

The mere fact that a court order is mandatory, rather than prohibitive, does not transform injunctive relief into a writ of mandamus,[5] and an injunction is not void merely because it is mandatory in nature. See *Taylor v. Evans*, 232 Ga. 685, 686 (1) (208 SE2d 492) (1974) (upholding injunction requiring party to remove a grave marker); *Atlanta Country Club v. Sanders*, 230 Ga. 146, 148 (195 SE2d 893) (1973) (upholding injunction requiring property owner to mark road and keep it locked). Moreover, a trial court may issue a mandatory injunction when mandamus relief is not available. See *Bregman v. Orkin Exterminating Co., Inc.*, 213 Ga. 561, 562 (100

---

[5] "Mandamus is an extraordinary remedy to compel a public officer to perform a required duty when there is no other adequate legal remedy." (Citation omitted.) *James v. Montgomery County Bd. of Ed.*, 283 Ga. 517 (661 SE2d 535) (2008); see also *Rigby*, supra, 294 Ga. at 254; OCGA § 9-6-20. Additionally,

> [a] private person may by mandamus enforce the performance by a corporation of a public duty as to matters in which he has a special interest. However, by its explicit terms, the duty sought to be enforced must be a public one. Generally, in the context of mandamus, a public duty is one that affects the general public rather than a private individual.

(Citation omitted.) *Rigby*, supra, 294 Ga. at 255; see also OCGA § 9-6-23.

12

SE2d 267) (1957) (where plaintiff seeks to compel corporation to allow her to inspect the corporate books, plaintiff's remedy lies in equitable relief, not writ of mandamus).

"A mandatory injunction is an extraordinary remedy, one of the most powerful a court can issue." *Mabry*, supra, 274 Ga. at 510 (5). No exercise of power is more delicate or requires "greater caution, deliberation, and sound discretion, or is more dangerous in a doubtful case, than the issuing of an injunction." Id. Injunctions must be "crafted in a manner that is the least oppressive to the defendant while still protecting the valuable rights of the plaintiff." Id.

Nevertheless, where, as here, the trial court has declared that a party is obligated to perform certain contractual duties, the trial court does not abuse its discretion in issuing a mandatory injunction. See *Mabry*, supra, 274 Ga. at 509-510 (5) (where insurance company had duty to evaluate damage claims for diminution in value, trial court could issue permanent injunction requiring insurance company to do so). Here, the trial court's mandatory injunction merely requires the Board to follow its own bylaws and place Boatright, a qualified candidate for election, on the ballot. Requiring the directors of a corporation to abide by the corporation's bylaws cannot be considered oppressive. See *Gwin v. Thunderbird Motor Hotels, Inc.*, 216 Ga. 652, 658 (2) (119 SE2d 14) (1961) (directors of a corporation are presumed to

13

have knowledge of the corporate bylaws and are bound by the bylaws). Accordingly, the trial court did not abuse its broad discretion in fashioning the injunction.

In sum, the trial court's finding that the Election Committee's decision was arbitrary and capricious is supported by the evidence in the record and the trial court did not abuse its discretion in ordering injunctive relief.

*Judgment affirmed. Barnes, P. J., and Branch, J., concur*.