**THIRD DIVISION**
**DOYLE, P. J.,**
**MARKLE and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 3, 2026**

# In the Court of Appeals of Georgia

A25A1957. GIRLS GALORE, INC. v. CITY OF ATLANTA.

DOYLE, Presiding Judge.

Girls Galore, Inc., d/b/a Allure Gentlemen's Club ("Allure") appeals from a Fulton County Superior Court order affirming a decision by the mayor of Atlanta revoking an alcohol license issued to Allure. Allure contends that the superior court erred because (1) the City of Atlanta ("the City") violated Allure's due process rights by failing to give it proper notice of the initial licensing review board hearing; (2) the superior court applied the wrong evidentiary standard; and (3) the superior court retroactively applied a penalty scheme that took effect in 2021, despite the fact that certain conduct occurring in 2020 was part of the basis for the revocation. For the

reasons that follow, we vacate the judgment of the superior court and remand for further proceedings consistent with this opinion.

The record, which is largely undisputed, shows that Allure is an adult entertainment establishment that sells alcohol to its patrons pursuant to a license issued by the City; Nicholas Stergion is Allure's registered agent. In January 2021, at around 4:00 a.m., police responded to a call regarding an alleged shooting at Allure. They arrived at the scene and observed multiple cars in the parking lot and approximately 50 to 75 people in or leaving the building. Police learned that there were two gunshot victims. Based on interviews at the scene, police obtained a warrant to search the premises later that month. During the search, police identified seven people (including a manager, bartender, and disc jockey) working at the business without required adult entertainment permits. Police sought but did not find any business records evincing the sale of alcohol during normal operating hours or after hours.

In February 2024, the city prepared a letter ("the Show Cause Letter") directing Stergion to appear at an April 2024 hearing to show why Allure's alcohol license should not be suspended or revoked based on alleged violations of the Atlanta Code of Ordinances ("City Code"). Among other things, the letter alleged the failure

to supervise employees properly, operating after the City Code's 3:00 a.m. deadline to clear the premises of patrons, and violating requirements for employees to have adult entertainment permits.

There is evidence that the Show Cause Letter was personally delivered to the business and given to a manager by a police investigator. The letter was also mailed to the business address, emailed to the business email account on file with the City, and left at the door of Stergion's residence by an investigator after he knocked and nobody answered.[1]

In April 2024, the hearing was held before the City's License Review Board; no one appeared on behalf of Allure. At the hearing, the City presented the testimony of four police officers as well as body-cam footage from the night of the shooting. The officers testified as to their observations upon responding to the shooting call and later executing the search warrant, and they described the City's efforts to deliver the Show Cause Letter to Stergion and Allure.

At the close of the hearing, the review board found that Allure had committed three violations: operating after hours, failure to supervise employees, and procedural

---

[1] Allure identifies no evidence that these events regarding notice did not occur; it instead argues that they were ineffectual.

violations for the lack of appropriate employee permits. The board recommended revocation of Allure's alcohol license for operating after hours, which the board noted was the second such violation based on a 2020 offense orally proffered by the City's counsel. The board also recommended two concurrent 30-day license suspensions and a $5,000 fine.

Based on this recommendation, the mayor revoked Allure's alcohol license due to the after-hours violation, deeming it to be the second such violation[2] and citing the progressive penalties available for a second violation codified in the pre-2021 City Code § 10-109.1(b): "[m]inimum of 30 – 180 days to one year suspension of license or revocation and $2,500 fine."[3]

Allure filed a petition for review in the superior court pursuant to the Superior and State Court Appellate Practice Act, OCGA § 5-3-1 et seq. ("SSCAPA"). Following a non-evidentiary hearing in which all parties were represented, the

---

[2] The mayor did not base his penalty determination on the other violations.

[3] This language is from a prior version of the City Code that was amended in 2021. In relevant part, the new language simplified this provision stating that the suspension range was from a "[m]inimum of 30 days to a maximum of one year," instead of a "[m]inimum of 30 — 180 days to one year suspension." Each provision also authorizes revocation for a second violation.

superior court entered an order affirming the mayor's decision. Specifically, the court ruled that Allure had sufficient notice of the review board hearing, the mayor's decision was supported by "substantial evidence," and the mayor's consideration of the prior violation from 2020 was not an unlawful retroactive application of the amended City Code. This Court granted Allure's petition for discretionary review. See OCGA § 5-6-35(a)(1) (providing a discretionary appeal procedure for decisions of superior courts reviewing decisions of quasi-judicial decisions of boards or agencies of local governments). See generally *City of Atlanta v. Girls Galore, Inc.*, 366 Ga. App. 139, 141 (881 SE2d 13) (2022) (reviewing an appeal of a mayor's decision under former OCGA § 5-4-1 et seq. (now repealed and replaced by Ga. L. 2022 at 875)).

1. Allure contends that (a) the superior court erred by applying the wrong standard in its review of the evidence under OCGA § 5-3-5(a); and (b) even if a 2024 violation were properly proved, there was insufficient proof that this was a second violation. We agree in part.

We begin with the applicable statutory language. In doing so, we

presume that the legislature meant what it said and said what it meant. Toward that end, we must afford the statutory text its plain and ordinary meaning, consider the text contextually, read the text in its most natural

5

and reasonable way, as an ordinary speaker of the English language would, and seek to avoid a construction that makes some language mere surplusage.

*Smith v. Gadegbeku*, 377 Ga. App. 39, 42-43 (1) (921 SE2d 524) (2025) (footnotes and punctuation omitted).

(a) *Standard of review in the superior court*. Allure filed its petition for review in the superior court in August 2024, under the procedures established in the SSCAPA.

The SSCAPA went into effect on July 1, 2023, and replaced the prior state court appellate procedures provided for in OCGA §§ 5-3-1 et seq., and 5-4-1 et seq. See Ga. L. 2022, pp. 767-781, §§ 1-1 through 1-2. As explained by the General Assembly, the SSCAPA provides a single, modern, and uniform procedure called a 'petition for review' for appealing a decision made by a lower judicatory to a superior or state court.

*City of Snellville v. Snellville Beverage Store*, 375 Ga. App. 690, 691 (917 SE2d 360) (2025) (punctuation omitted).[4] On appeal in this context, "this Court's duty is not to

---

[4] See generally OCGA § 5-3-4(a) (except as provided, "the superior and state courts shall have appellate jurisdiction pursuant to this chapter over a final judgment of a lower judicatory"); OCGA § 5-3-3(5) ("'Judicatory' means any court, official, board, tribunal, commission, municipal or county authority, council, or similar body exercising judicial or quasi-judicial powers authorized by law."). See also *Clark v. Jefferson Cap. Sysystems, LLC*, 374 Ga. App. 167, 169(1) (911 SE2d 713) (2025).

review whether the record supports the superior court's decision; instead, we must determine whether the record supports the decision of the lower tribunal" under the appropriate standard. *Bd. of Regents of the Univ. System of Ga. v. Drake*, 372 Ga. App. 202, 203 (904 SE2d 37) (2024) (decided under former OCGA § 5-4-1 (2022)).

OCGA § 5-3-5 (a) is the part of SSCAPA that establishes the standard by which superior courts review lower judicatory decisions:

[A] reviewing [superior] court shall:

(1) Review only matters raised in the record of the proceeding in the lower judicatory;

(2) Accept the findings of fact and credibility of the lower judicatory unless they are clearly erroneous;

(3) Accept a decision regarding an issue within the sound discretion of the lower judicatory unless such a decision was an abuse of discretion;

(4) Determine whether the final judgment was sustained by *sufficient evidence*; and

(5) Review questions of law de novo.

(Emphasis added).

Relevant to this case, the term "sufficient evidence" is undefined and differs from the earlier Code section, former OCGA § 5-4-12(b), which directed superior courts to "determin[e] whether the judgment or ruling below was sustained by *substantial evidence*." *Drake*, 372 Ga. App. at 203 (emphasis added) (quoting OCGA § 5-4-12(b) (2022)).

Allure notes this difference and argues that the superior court's order appears to have partially conflated the terminology in the old and new procedures. The order correctly states that under the current procedure, the court must "determine whether the [appealed decision] is supported by *sufficient evidence*," but the court later concluded that "the Mayor's determination is supported by *substantial evidence*, including law enforcement reports, videos, witness testimony, and [Allure's] licensing history." It did so after citing case law stating that "the substantial-evidence standard is effectively the same as the any-evidence standard ... when reviewing issues of fact." *Clayton County v. New Image Towing & Recovery, Inc.*, 351 Ga. App. 340, 343(1) (830 SE2d 805) (2019) (physical precedent only) (punctuation omitted) (citing former OCGA § 5-4-12(b) and *City of Atlanta Gov't v. Smith*, 228 Ga. App. 864, 865(1) (493 SE2d 51) (1997)). Based on this, Allure argues that the superior court erred by viewing

the mayor's determination under an "any evidence" standard from case law that predated the statutory change.

To the extent that the superior court conflated the two standards, it erred. But a close reading of the superior court's order and the applicable standard in OCGA § 5-3-5(a) shows that reversal is not required. Cf. *Emory Univ. v. Levitas*, 260 Ga. 894, 898(1) (401 SE2d 691) (1991) (holding that a superior court's application of the wrong standard did not require remand in the context of a superior court's review of a lower tribunal's decision for which "the court cannot substitute [its] judgment as to the weight of evidence on questions of fact" (punctuation omitted)). The language in the pre-SSCAPA case law quoted by the superior court stands for the proposition that "courts apply the any-evidence standard when reviewing issues of fact." *New Image Towing and Recovery, Inc.*, 351 Ga. App. at 343(1). This is not inconsistent with SSCAPA's factual review standard in OCGA § 5-3-5(a)(2), which provides that reviewing courts must "[a]ccept the findings of fact and credibility of the lower judicatory unless they are clearly erroneous." We see no meaningful difference in the superior court's reference to the "any evidence" standard here because reviewing courts often use this language interchangeably when addressing factual findings: "we

9

review the trial court's factual findings under the clearly erroneous test, and we will not disturb the trial court's findings of fact if there is any evidence to sustain them." *Rigby v. Boatright*, 330 Ga. App. 181, 185(1) (767 SE2d 783) (2014) (citing *Patel v. Patel*, 285 Ga. 391, 392(1)(a) (677 SE2d 114) (2009) ("[S]ince the clearly erroneous test is the same as the any evidence rule, we will not disturb factfindings of the trial court if there is any evidence to sustain them."). See also *Alpha Genomix Lab'y, Inc. v. Crandall*, 368 Ga. App. 842, 848 (891 SE2d 45) (2023) ("The clearly erroneous test is the any evidence rule." (punctuation omitted)). Thus, the superior court's reference to the any evidence standard as applied to factual findings does not require reversal.

With respect to the superior court's statement that "the Mayor's final determination was supported by 'substantial evidence,'" instead of "sufficient evidence," we likewise discern no reversible error. The superior court's order is clear that it was not merely viewing the record for a mere scintilla of evidence that, alone, might not have supported the mayor's final determination. See generally *Biestek v. Berryhill*, 587 US 97, 102–03(II) (139 SCt 1148, 203 LE2d 504) (2019) (explaining that "[t]he phrase 'substantial evidence' is a 'term of art' used throughout administrative

law to describe how courts are to review agency factfinding"; that it means reviewing the administrative record for "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"; that the standard is a "deferential" one; and that "the threshold for such evidentiary sufficiency is not high[,]" but is "'more than a mere scintilla'" (citations and punctuation omitted)). See also *Satisfactory Evidence*, Black's Law Dictionary (12th ed. 2024) ("sufficient evidence" is seen as enough "to satisfy an unprejudiced mind seeking truth"). The court correctly relied on testimony presented by multiple witnesses, body cam video, and police reports, and it explicitly held that "the totality of the evidence supports the Mayor's decision." This evidence included officer testimony that after they arrived at the scene after 4:00 a.m., they saw multiple cars in the parking lot; 50 to 75 people in or leaving the premises; "50 to 60 people still inside the club, sitting around the bar, sitting around at tables"; and valet workers on site. This evidence was sufficient for a factfinder to conclude that Allure was operating at that time, which was after the City Code's 3:00 a.m. deadline to clear the premises. And according to OCGA § 5-3-5(a)(2), these factual findings must be accepted unless clearly erroneous, which they were not, based on the evidence in the record. Thus, as provided by SSCAPA, the superior court

correctly deferred to factual findings of the licensing review board as adopted by the mayor, and having done so, the superior court correctly held that those facts supported the determination that Allure had violated its liquor license by operating after hours.

(b) *Sufficiency as to prior violations*. Allure also contends that the superior court erred by finding that the evidence was sufficient to justify the penalty enhancement relied upon by the mayor based on the purported 2020 violation. On this point, we agree.

Despite the fact that the violation at issue in this case occurred in January 2024, and the City Code was amended in 2021, the mayor's penalty assessment appears to rely on language from the former City Code.[5] The former code did not authorize revocation for a first violation, but it did provide for revocation for a second violation. The mayor's letter quotes language consistent with the former Code (not providing a revocation option for a first violation), and it references the licence review board's recommendation for revocation based on the finding of a second violation. Thus, the

_____

[5] For a first violation, the current version of the City Code authorizes penalties ranging from a minimum of five days suspension to revocation. See Atlanta City Code § 10-109.1(b). Revocation was not an option for a first violation under the pre-2021 version.

12

mayor's determination appears explicitly predicated on a finding that this was Allure's second violation.

In light of this, Allure challenges the evidence showing that it had a prior violation. On appeal, the City's brief is essentially silent on this question and cites no evidence at the license review board showing a prior violation. Our review of the record also reveals none introduced at the hearing. The hearing transcript reflects a discussion between board members and the City attorney seeking to determine Allure's violation history, but all that is offered is the attorney's oral reference to untranscribed comments from the public regarding prior violations and statements by the City's attorney that Allure had a 2020 after-hours violation, which similarity the board noted.[6]

---

[6] We have no way of knowing if this is the same 2020 after-hours violation that was rejected by the mayor in a separate decision addressing different violations. Those violations were subsequently reversed on petition to the superior court, which judgment we affirmed in *Girls Galore, Inc.*, 366 Ga. App. at 139. Given this lack of clarity in the record as to the violation, the appellate nature of the superior court proceeding, and the lack of particularized reference to prior-violation evidence or records by the mayor or review board, we do not apply the rule from criminal cases that "a trial court may take judicial cognizance … of records on file in its own court." *Petkas v. Grizzard*, 252 Ga. 104, 108 (312 SE2d 107) (1984).

The attorney's oral representations did not constitute evidence. See, e.g., *Polite v. State*, 273 Ga. App. 235, 238(3) (614 SE2d 849) (2005) (explaining that "statements by attorneys are not evidence" (punctuation omitted)); *Sutton v. State*, 263 Ga. App. 188, 191(2) (587 SE2d 379) (2003) (same). Although the trial court notes that the mayor is authorized to revoke the license based on a single violation, that was not the stated basis for the mayor's decision. It is not clear how the license review board or mayor would have exercised its discretion based on a single violation, although the review board transcript reveals discussion about maintaining consistency with respect to punishment based on the number of violations. In light of the error in the mayor's stated rationale, the superior court erred by upholding the penalty enhancement absent an adequate record of the prior violation.[7]

2. Allure makes a separate challenge to the notice it received of the license review board hearing, arguing that it violated its due process rights. Allure does not point to any specific violation of a statute or City Code provision — the City Code

---

[7] In light of this ruling we need not address Allure's argument that the mayor's reliance on the 2020 violation was improperly retroactive. The pre-2021 City Code was silent as to consideration of violations from prior license years, and a new subsection was added to the current code making explicit that prior violations were counted cumulatively. See Atlanta City Code § 10-109.1(c)(1).

14

merely requires five-day "written notice" to the licensee of the time, place, and purpose of the hearing. Atlanta City Code § 10-109(c). It does not have a specific service requirement. Compare OCGA § 9-11-4 (establishing statutory service requirements under the Civil Practice Act).

"Due process requires that notice of a proceeding be 'reasonably calculated to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Blue Stone Lofts, LLC v. D'Amelio*, 268 Ga. App. 355, 359 (601 SE2d 719) (2004). Here, there was evidence that an officer personally delivered the Show Cause Letter to a manager on site at the business, left the Show Cause Letter at Stergion's residence after knocking and waiting for an answer, and emailed the Show Cause Letter to the business email address on file with the City. This procedure was not so deficient as to violate Allure's due process rights. See, e.g., *Am. Mobile Imaging, Inc. v. Miles*, 260 Ga. App. 877, 878 (581 SE2d 396) (2003) (holding that a statutory mailing requirement satisfied due process concerns regardless of actual notice).

In sum, the record supports a finding that Allure committed the violations alleged in the Show Cause Letter, but it does not support a finding of prior violations.

Accordingly, we vacate the superior court's order affirming the mayor's penalty and remand for proceedings consistent with this opinion.

*Judgment vacated and case remanded. Markle and Padgett, JJ., concur.*